153 A.2d 577 (1959)
Billie GLADSTONE, Appellant,
v.
Louis W. BENNETT et al., Appellees.
Lottie SPIEGEL, Appellant,
v.
Louis W. BENNETT et al., Appellees.
Bernard WEAFER, Appellant,
v.
Stanley Lloyd KAUFMAN et al., Appellees.
Supreme Court of Delaware.
July 24, 1959.
Clarence W. Taylor and Russell J., Willard, Jr., of Hastings, Taylor & Willard, Wilmington, for appellant Billie Gladstone.
William E. Taylor, Jr., Wilmington, for appellant Lottie Spiegel.
Sidney Balick, Wilmington, for appellant Bernard Weafer.
James R. Morford, Morford, Young & Conaway, Wilmington, and Milton Paulson, New York City, for plaintiffs below  appellees.
David F. Anderson, of Berl, Potter & Anderson, Wilmington, and Orrin G. Judd, of Goldstein, Judd & Gurfein, New York City, for Eastman Dillon Union Securities Co., defendant below  appellee.
Robert H. Richards, Jr., of Richards, Layton & Finger, Wilmington, for corporate defendants below  appellees, Sunray Mid-Continent Oil Co. and Subsidiaries.
SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.
*579 BRAMHALL, Justice.
We are concerned in this appeal with the question of whether the action of the Vice Chancellor in approving the proposed settlement between certain stockholders of Sunray Mid-Continent Oil Company (Sunray) in a derivative action brought on behalf of Sunray and certain of its wholly or partly owned subsidiaries against Eastman Dillon Union Securities Company (Eastman Dillon) and its partners and the individual directors of the subsidiary corporations constituted an abuse of discretion.
The pertinent facts are substantially as follows:
On July 25, 1957, plaintiffs instituted a derivative action against the defendants above designated, charging that in three promotion and underwriting transactions, Eastman Dillon and its partners appropriated and diverted corporate opportunities belonging to Sunray and obtained gifts of its property and assets. Plaintiffs further alleged that through the stock ownership Eastman Dillon, by reason of its fiduciary relationship as promoter and financial adviser, dominated and controlled policies of Sunray. Plaintiffs also contended that three of the five Suntide directors were also Sunray directors and that the other two were Eastman Dillon partners; that four of the seven OMR directors were also Sunray directors and the other three were Eastman Dillon partners.
A short résumé of these transactions is pertinent in describing the relationship of Eastman Dillon to these corporations.
Suntide was organized in 1952 under the laws of this state by Eastman Dillon, with an authorized capital stock of 2000 shares of common stock at a par value of $1.00. Eastman Dillon acquired all 2000 shares for $3,000. Very shortly thereafter, the certificate of incorporation was amended so as to change the authorized capital stock to 5,000,000 shares at 1¢ per share and the 2000 shares issued and owned by Eastman Dillon into 300,000 shares. Suntide then sold 1,500,000 shares to Sunray for $15,000, or 1¢ per share. Eastman Dillon purchased 300,000 shares of Suntide for $3,000. This left Sunray with 50% and Eastman Dillon with 10% of the issued stock. Sunray, as a part of the transaction, transferred to Suntide a refinery project on which Sunray had spent more than $1,700,000.
Eastman Dillon underwrote 700,000 shares of Suntide stock, together with debentures, *580 in the sum of $7,000,000. In addition, Suntide borrowed $10,000,000 from the Hanover Bank, making the total capitalization furnished by Eastman Dillon $17,000,000. Sunray guaranteed to feed Suntide's refinery with 25,000 barrels of crude oil a day for a period of ten years. Sunray also granted to Suntide the use of certain valuable dock facilities and agreed to provide management personnel and legal services needed for the refinery project.
The total emoluments in underwriting profit, selling commission, management fee and shares of Suntide stock received by Eastman Dillon as a result of this transaction were alleged to amount to $2,822,500.
In a transaction following a somewhat similar pattern OMR was organized in 1952, with Sunray again acquiring 50% of the outstanding stock of that corporation. Eastman Dillon is alleged to have received a total emolument from that transaction of $2,080,250.
In 1953 Eastman Dillon organized UCAN under the laws of this state, with Eastman Dillon acquiring 25% of the stock, or 25,000 shares, Great Lakes Carbon Corporation 25,000 shares and again Sunray with 50%, or 50,000 shares.
Somewhat later Eastman Dillon exchanged its 25,000 shares of UCAN stock for Sunray stock at the rate of three-quarters for one.
Eastman Dillon received no fees or commission from this transaction other than its profit on the 25,000 shares of stock. As of May 6, 1959, the value of this stock was alleged to have been approximately $650,000.
Defendants denied the essential allegations of the amended complaint. They asserted that each of the transactions was approved by the corporate officers and directors of the company in the exercise of sound business judgment. They further averred that all the details of these transactions were fully set forth in the statements filed with the Securities and Exchange Commission and in various periodicals of wide circulation. They also contended that plaintiffs were barred from any recovery in any of these transactions because of laches.
After considerable discovery by plaintiffs' counsel, including the depositions of Gilmour, senior partner of Eastman Dillon, and Wright, president of Sunray, plaintiffs' counsel concluded that the charges, as far as they concerned the alleged fiduciary relationship of Eastman Dillon towards Sunray and its subsidiaries, could not be proven. This conclusion inevitably led to a discussion between the parties and their respective counsel as to the possibility of settling the claim against Eastman Dillon arising out of fees and commissions collected by it, amounting to approximately $500,000. After considerable negotiation, a settlement was agreed upon, subject to the approval of the Court of Chancery under Rule 23 of that court, Del.C.Ann. This agreement, in substance, provided:
1. Eastman Dillon would pay Suntide the sum of $112,500 and a like amount to OMR within twenty days after the approval of the settlement and the dismissal of the action with prejudice.
2. Eastman Dillon, without charge, would assist Sunray and Suntide in obtaining financing for a new coking plant.
3. Sunray would waive all charges for services rendered by it to Suntide in obtaining additional financing in 1958, in furnishing managerial services and the services of its legal department, together with all commissions for obtaining sales contracts and sources of supply of crude oil on behalf of Suntide.
4. Sunray would waive all similar charges as to OMR.
5. Each corporate defendant would execute a release and deliver it on the day of payment.
6. Attorneys' fees would be paid to Suntide and OMR equally after application to and approval by the court.
*581 7. In the event the stipulation should not be approved, all sums paid by Eastman Dillon would be immediately repaid.
8. Plaintiffs would apply promptly to the Court of Chancery for approval of this stipulation.
In conformity with this agreement, a petition was filed with the Vice Chancellor asking his approval of the proposed settlement. Notice thereof was given to all stockholders setting forth in full the pertinent facts upon which the proposed settlement was based and stating further that at the hearing to be held upon said petition, any stockholder could present any evidence that might be proper and relevant to the issue to be heard, provided proper notice of his intention to appear and copies of papers and briefs should be served upon counsel.
At the hearing the Vice Chancellor had before him the examinations and documentary evidence of plaintiffs, together with statements of counsel explaining in full the basis of the cause of action, the lack of sufficient evidence to support a fiduciary relationship on the part of Eastman Dillon and the terms of settlement. In addition, the testimony of several objectors was also heard. No evidence was produced to refute the statement of plaintiffs' counsel to the effect that the evidence did not support the claim that Eastman Dillon was acting in a fiduciary capacity. After considering the evidence and statements of counsel, the Vice Chancellor approved the settlement. He considered the merits of the claim and found that the bargain arrived at and published before the sale of stock to outsiders resulted from sound business judgment in arm's length bargaining and that there was no basis for holding Eastman Dillon, or any of its partners, to the business standards of a fiduciary.
Appellants make several objections to the approval of the settlement. They are substantially as follows:
1. That the facts presented to the court below were insufficient and inaccurate.
2. That the facts disclosed in the notice to stockholders were insufficient to warrant them in approving or objecting to the proposed settlement.
3. That had the facts been properly presented to the court, sufficient evidence would have existed to establish a fiduciary relationship.
4. That the settlement was approved without an independent determination by the court of the fairness of the settlement, the court relying on the motives of plaintiffs' counsel and the fact that the settlement did not shock the conscience of the court.
5. That the settlement on its face shows that Eastman Dillon has been permitted to usurp a corporate opportunity of Sunray, or, in the alternative, has received unauthorized gifts of corporate property through the issuance of stock for grossly inadequate consideration.
6. That the settlement agreement is so vague and indefinite that it violates the due process clause of the Fourteenth Amendment to the Constitution of the United States.
As we view appellants' objections, they raise the following questions:
1. Was the Vice Chancellor guilty of reversible error in holding that Eastman Dillon in its relationship with Sunray and its subsidiaries was not acting in a fiduciary capacity?
2. Was the Vice Chancellor guilty of an abuse of discretion in approving the settlement?
Was the Vice Chancellor guilty of reversible error in holding that Eastman Dillon in its relationship with Sunray and its subsidiaries was not acting in a fiduciary capacity?
Appellants are not too clear as to the basis of their claim that a fiduciary relationship existed on the part of Eastman Dillon to Sunray and its subsidiaries, or, assuming *582 the existence of such a relationship, the corresponding duty imposed thereby upon Eastman Dillon. As we understand their briefs and their argument before this court, this allegation stems from two facts: (1) the fact that Eastman Dillon was a promoter and that by reason thereof a fiduciary relationship existed with Sunray and its subsidiaries, and (2) the fact that partners of Eastman Dillon and Sunray were directors on the boards of Suntide, OMR and UCAN. Since Eastman Dillon had no director on the board of Sunray and did not in any manner attempt to control that corporation, it is conceded that no fiduciary relationship existed as to Sunray.
There is, of course, a fiduciary relationship between the promoters of a corporation and the corporation itself. Those who undertake to form a new corporation, to procure for it the capital through which it may carry out the purpose or purposes for which it was formed, are necessarily charged with the duty to act in good faith in dealing with it. Hays v. The Georgian, Inc., 280 Mass. 10, 181 N.E. 765, 85 A.L.R. 1251. They will not be permitted to benefit by any secret profit which they may receive at the expense of the corporation or of its members. Dickerman v. Northern Trust Company, 176 U.S. 181, 20 S.Ct. 311, 44 L. Ed. 423; Moore v. Warrior Coal & Land Co., 178 Ala. 234, 59 So. 219.
But, where the corporation deals with a promoter with full knowledge of all facts, courts will not set aside the transaction, since in such cases there is no secret or undisclosed property. Henderson v. Plymouth Oil Co., 16 Del.Ch. 347, 141 A. 197.
In this case counsel for plaintiffs stated to the Vice Chancellor at the hearing that he had found no evidence that Eastman Dillon was acting in a fiduciary capacity, but that, on the contrary, full disclosure had been made by Eastman Dillon, not only as to Sunray and its subsidiaries, but also as to the general public. In the notice to stockholders they were notified that any objections to the proposed settlement would be heard at the time of the hearing. At the hearing the statement of counsel for plaintiffs was uncontradicted. Even assuming that there was substantial evidence to show a fiduciary relationship on the part of Eastman Dillon, we think that there was unquestionably sufficient evidence to sustain the Vice Chancellor in his finding that no fiduciary relationship existed. We cannot therefore say that he was in error in his finding.
Appellants lean heavily upon the decision of Chancellor Seitz in the case of Pipelife Corporation v. Bedford, Del.Ch., 145 A.2d 206. In that case the corporation instituted an action against some of its promoters for the cancellation of certain stock issued to them in exchange for a non-exclusive license issued without consideration. They transferred the license for stock supposedly equal in value to the par value of the shares issued. They thereafter issued additional stock to outsiders in order to raise working capital. The Chancellor, while holding that the stock was not void and that the action of the board when taken was not voidable in the absence of a showing of some injury to the corporation, found that the knowledge which the directors had regarding the value of the license could not justify a conclusion that it was worth anything approximating the amount for which the promoters sold it to the corporation.
The correctness of the decision in the Pipelife case is not before us and we do not pass upon it. We hasten to add, however, that that case differs materially from the case before this court in that in the Pipelife case there was a complete failure to make full and proper disclosure to the original purchasers of the company stock. In the case before this court there was a full and complete disclosure of all essential facts.
We think that the Vice Chancellor was correct in his finding that Eastman Dillon was not acting in a fiduciary capacity to Sunray or any of its subsidiaries.
*583 Was the Vice Chancellor guilty of an abuse of discretion in holding that the settlement and compromise was fair and reasonable?
At the hearing, as previously stated, the Vice Chancellor had before him the benefit of the voluminous discovery by plaintiffs' counsel. He also heard the testimony of those who appeared in objection to the settlement. He had the benefit of the statements by counsel for the various parties to the action in explanation thereof.
It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement. Braun v. Fleming-Hall Tobacco Co., 33 Del. 246, 92 A.2d 302. Such procedure would emasculate the very purpose for which settlements are made. The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and exercise business judgment in determining whether the proposed settlement is reasonable. Appellants and other stockholders had an opportunity to present any facts which they might have been able to present in opposition. They did not produce any evidence to show the unreasonableness of the settlement or why it should not be approved. The Vice Chancellor found the settlement to be reasonable and fair. There was sufficient evidence to support his finding. To reverse this court must find that the evidence was so strongly to the contrary as to amount to an abuse of discretion. We are of the opinion that the evidence does not warrant any such action. To the contrary, we think that his judgment was based upon the weight of the evidence and should be upheld.
We consider other objections made by appellants and comment briefly upon them.
Appellants complain of the vagueness of the terms of the settlement. This objection is predicated upon the inclusion as a part of the settlement of the waiver by Sunray of charges against Suntide and OMR for services and commissions on which no dollar value was, or could be, placed. This item of the settlement seems to have been thrown in for the purpose of tying up all loose ends. The monetary figure of $225,000 was a very real figure and is certainly not indefinite and vague. We do not think that the fact that this waiver was thrown in should in any manner be allowed to vitiate the settlement.
As to the question of the value of the stock acquired by Eastman Dillon, we have approved the finding of the Vice Chancellor that there was no fiduciary relationship on the part of Eastman Dillon. This finding eliminates, we think, the claim for profits since Eastman Dillon was dealing at arm's length and had the right to make any profit it could. At any rate, the judgment of the Vice Chancellor in this respect is fully sustained by the evidence.
Appellants claim that there was insufficient notice to stockholders in that the notice failed to mention the disposition of the UCAN claim. It was stated in the notice that the proposed settlement was to be a final discharge of all claims asserted in the complaint. This claim was made in error since the notice of stockholders does adequately describe the claim. In any event, we think that the notice was clearly adequate, sufficient to put stockholders on notice of the necessity of protecting their interests. See Braun v. Fleming-Hall Tobacco Co., supra.
Appellants contend that the Vice Chancellor relied solely upon the recommendations of counsel in approving the settlement. This, if true, might be a serious objection. As previously stated, the Vice Chancellor had before him voluminous depositions from witnesses having a complete knowledge of the facts, along with other important evidence. Their testimony was never contradicted. The testimony of certain objectors was not fruitful in producing evidence tending to prove appellants' contention. *584 It is presumed that the Vice Chancellor considered the evidence presented; he states in his opinion that he did.
The judgment of the Vice Chancellor approving the terms of the settlement and compromise is affirmed.