GEORGE ISAACS,
Plaintiff,

*vs.*

LOUIS FORER, PERCY E. LANDOLT, JOHN F. DAILY, JR., SOL GELB, W. KEYSER MANTY, JULIUS MARKS, FRED J. BLOEMPOT, JOHN McCRARY, JERRY FINKELSTEIN, HERMAN PERL, STANLEY L. BARTELS, BASIC ATOMICS, INC., a corporation of the State of Delaware, and CHARLEX REALTY CORP., a corporation of the State of New York,
Defendants.

*New Castle, March 9, 1960.*

*Irving Morris,* of Cohen & Morris, Wilmington, and *Wolfe R. Charney, Louis C. Fieland* and *David Marcus,* New York City, for plaintiff.

*David F. Anderson,* of Berl, Potter & Anderson, Wilmington, and *Hartley La Chapelle,* New York City, for defendant Basic Atomics, Inc.

*Bruce M. Stargatt,* of Morford, Young & Conaway, Wilmington, and *Robert Haft,* New York City, for defendants John McCrary, Jerry Finkelstein, Herman Perl, Stanley L. Bartels and Charlex Realty Corporation.

*Arthur G. Logan* and *Aubrey B. Lank,* Logan, Marvel, Boggs & Theisen, Wilmington, and *Mortimer A. Shapiro,* New York City, for objecting stockholder Sophia M. Palley.

SEITZ, Chancellor: This is the decision on the petition of Basic Atomics, Inc. ("Basic") that the above captioned stockholder's derivative action be dismissed with prejudice upon approval of a tendered settlement which has been the subject matter of a hearing before this court after due notice to the stockholders. Various stockholders sent communications to the court. Some of them oppose the settlement but their objections are so general in nature as to be unanswerable. One stockholder, Sophia M. Palley, appeared by counsel and raised specific objections to the settlement. Her counsel participated fully in the hearing and examined the presidents of the two corporations involved. Plaintiff recommends the settlement.

The complaint contained three causes of action which are described in detail in the petition and notice to stockholders. There is objection to the sufficiency of the notice but I think it without sufficient merit to warrant discussion.

While the original complaint contained three causes of action the principal one sought to rescind an option agreement dated October 23, 1958, between Basic and the Charlex stockholders. Basic had an option to acquire all of the shares of Charlex Realty Corporation ("Charlex") under a formula by which it would have given to Charlex up to 2,700,000 shares of Basic. This option was to last until December 31, 1960.

After this action was commenced and while discovery proceedings were pending, Basic and Charlex modified the original agreement

by reducing to $1,100,000 the maximum number of Basic shares which would be required in order to exercise the option. At the same time (July 1959) Basic exercised the option as modified. The reduction in the number of Basic shares to be delivered upon exercise of the option is tendered as the subject matter of the settlement. I need not discuss the delay in bringing the matter before the court.

At the outset it must be kept in mind that this is a requested approval of a settlement of a derivative action. The principles applicable thereto are stated in several Delaware cases and I will not repeat them. In substance, they require something less than a trial but more than a mere cursory treatment of the issues posed by the lawsuit. The evidence presented was substantial.

It is also important to remember that this is a stockholder's derivative action and where the directors are charged with breaches of trust involving their actions with other parties, it is important at the outset to evaluate their relationship to such parties. The fairly substantial discovery taken by plaintiff failed to destroy the apparent arm's-length nature of the original option agreement. At the settlement hearing the plaintiff's attorney represented that he had no knowledge of any additional facts which might tend to overcome the appearance of an arm's-length transaction. The objecting stockholder pointed to some factors which she said suggested the possibility that the transaction might not have been at arm's length and thus called for further investigation.

It is undisputed that none of the directors of Basic who voted for the original option agreement had any stock interest in Charlex. However, Forer and Gelb, who negotiated the agreement for Charlex, became directors of Basic. Forer also became president and Gelb general counsel. These gentlemen were each entitled to 2% of the shares of Basic received by Charlex under the original option agreement. The objecting stockholder says this situation deserves further investigation because a "deal" may have been involved.

The oral explanation given at the hearing does not cast doubt on the arm's-length nature of the negotiations surrounding the making of the original agreement despite the subsequent association of Gelb

and Forer with Basic. The testimony demonstrated quite clearly that the two gentlemen made their 2% arrangement with the Charlex stockholders and were "on the Charlex side" in the negotiation with Basic concerning the original number of shares of Basic which were to be involved upon exercise of the option. Forer became President of Basic when its president resigned because he disagreed with the board's decision to execute the option. The Basic directors were not beholden to Forer. In fact, Gelb and Forer did not vote as directors to exercise the option. Five independent directors of Basic voted to exercise it.

One officer, director and major stockholder of Charlex owned 15,000 shares of Basic at the time but this was not close to working control. Basic directors owning 75,000 shares of Basic and none of Charlex voted for the option agreement and no reason is suggested why they would want to reduce the value of their own shares.

The facts emphasized by the objecting stockholder do not suggest any reasonable possibility that were the action tried the plaintiff would be able to show that the original option agreement was not the result of an arm's-length transaction. This of course is of vital importance because in such a situation a plaintiff has a heavy burden to discharge before he can succeed in such a situation.

But it may be said that the situation was different at the time the option was exercised in July 1959 for 1,100,000 shares of Basic. The answer is that at that date five of the seven Basic directors were still independent of Charlex and yet substantial stockholders of Basic. While two of the directors were now interested because of their 2% agreement with Charlex, the fact is that they did not vote and plaintiff would have a heavy burden to show that they dominated the board of Basic at the time. Thus, plaintiff's heavy burden would continue.

■ The objecting stockholder attempted to show that based on comparative values at the time of the exercise of the option the per share book value of Basic was substantially greater than Charlex. I have considered the evidence on this point and I think that one cannot say that the relative values were so disproportionate that the majority of disinterested directors of Basic were guilty of breach of fiduciary duty in determining to exercise the option. We start with

the premise that directors are presumed to act in good faith. Here the imponderable value factor for comparative purposes is the economic future of Charlex. The Basic directors were expressing their belief that Charlex had a great earnings potential and that such value would redound to the benefit of the Basic stockholders by the exercise of the option. Of course, the business of Charlex is a gamble in the future of land developments in Florida. However, in view of the picture presented this court does not feel justified in substituting its judgment for that of directors particularly where, as here, an arm's-length transaction is involved.

The objecting stockholder takes exception because the option was exercised long before required by its terms. I pressed Basic's president at the hearing to explain this decision by the board. The principal reason given for exercising the option in July 1959 appears to have been that it was really necessary to assist Charlex because it was then in real need of capital. If one asks what difference did that make to Basic, the answer is that the Basic board felt that Charlex had a great future and they wanted to be a part of it. In order for Charlex to obtain the necessary capital Basic had to take such action because at that time it had all of the Charlex's accounts receivable tied up to secure substantial loans. There was also a belief expressed that the exercise of the option improved Basic's balance sheet but I consider this of limited importance in view of Basic's then status.

In the final analysis, at trial, the issue would be whether the business judgment of the directors in exercising the option when they did, in an apparent arm's-length transaction, exceeded the broad bounds of business judgment. When combined with the principles of good faith, it is evident that the plaintiff would have been confronted with a heavy burden. This was a "reason" to settle.

The objecting stockholder makes a great issue about the large sums of money advanced by Basic to Charlex. But I think the evidence at the trial might well result in a determination that the loans were well within the business judgment rule. The loans were well secured. The objecting stockholder stresses the fact that Basic subordinated its loan so that Charlex might obtain new capital. When Basic exercised its option Charlex of course became for all practical

purposes a wholly owned subsidiary. The question of subordinating its loan under the circumstances existing at that time could well be determined to be within the range of business judgment. The evidence at the hearing on the settlement tended strongly to support this possibility.

The objecting stockholder also suggests that a so-called Texas Sulphur option is of substantial value to Basic and that the benefits therefrom to the Basic stockholders were diluted by the exercise of the option. Actually the Texas Sulphur option came into existence after the original option agreement with Charlex was executed. It is clear from the evidence that Basic used the fact of the Texas Sulphur option and Charlex's need for capital as bargaining points in reducing the number of Basic shares subject to the option to 1,100,000 shares.

The objecting stockholder also claims that since the matter of the exercise of the option took place after the complaint was filed this court should not give it judicial approval even if the settlement is approved.

Suppose this court were presented at the trial solely with the issue as to the legality of an option by which 1,100,000 shares of Basic could be exchanged for the Charlex stock for a period ending December 31, 1960. Could the court say that the agreement should be cancelled? I have serious doubt that it could because to do so would be to assume that at no time during the remainder of the option period could the value of the Charlex shares become sufficiently beneficial to warrant the exercise of the option.

Consequently, I believe the court can only evaluate the matter properly in this case by recognizing the fact of the exercise of the option and making an appropriate comparison on that basis. I conclude that the court should consider the fact of the exercise of the option in passing upon the settlement and should include that aspect as a part of any approved settlement.

The objecting stockholder also objected to the formula applied in arriving at the number of shares to be tendered upon the exercise of the option but I think the evidence fairly demonstrated that the basis employed was not so unreasonable as the stockholder suggests.

There are two other causes of action asserted in the complaint but the objecting stockholder makes no point of them. Based on my analysis of these causes of action in the light of the record, I am satisfied that plaintiff would have substantial difficulty in sustaining them.

Viewed overall, the settlement is reasonable and will be approved.

Present order on notice.