194 A.2d 549 (1963)
Hyman SAMINSKY and Betty Siegel, Trustee for Joan Siegel, Plaintiffs,
v.
Charles C. ABBOTT et al., Defendants.
Court of Chancery of Delaware, New Castle.
August 19, 1963.
William E. Taylor, Jr., Wilmington, Abraham L. Pomerantz of Pomerantz, Levy, Haudek & Block, New York City, James M. Tunnell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, and Alfred Jaretzki, Jr., Marvin Schwartz, of Sullivan & Cromwell, New York City, for appearing defendants.
Frank J. Miller, Wilmington, Arthur T. Susman, Chicago, Ill., for objectors Sidney C. and Janice R. Kleinman.
*550 SEITZ, Chancellor.
This is the decision on an application to approve the settlement of this action.
This action was commenced as a representative suit by certain certificate holders of some six common law trusts which form a part of the so-called Keystone Custodian Funds. Basically, plaintiffs challenged the validity of the underwriting contract and the amount and percentage scale of the management fees and recurring charges paid to the Trustee. On defendants' motion for summary judgment, the court ruled that the then existing underwriting contract was void under the Investment Company Act of 1940, because it had been continued for more than two years without stockholder approval. The court refused to dismiss plaintiff's claims with respect to the management fees and recurring charges on the ground that they presented issues for trial. See Saminsky v. Abbott (Del.Ch.) 185 A.2d 765. Before entering an order on the opinion, the court granted the defendants leave to file further affidavits and a brief in support of additional grounds purportedly establishing the validity of the underwriting agreement. These papers were subsequently filed. Thereafter, plaintiffs engaged in extensive discovery by way of inspection of documents and by the taking of the depositions of two of Keystone's executives.
Before the deferred matters were presented to the court for decision, the parties after much negotiation agreed to the settlement now before the court, subject to the court's approval.
Since 1946, the management fee paid by the Funds has been ½ of 1% on the first $150,000,000 of assets and 3/8 of 1% on the balance. The Funds bear none of the expenses of operation directly. Instead they pay a "recurring charge" to Keystone, the Trustee, for assuming such expenses. Since 1944, this charge has amounted annually to ¼ of 1% of the aggregate net assets of the Funds.
Under the terms of the settlement, the following is the proposed management fee and recurring charge schedule (except on Trust B-1):

 MANAGEMENT FEE RECURRING CHARGE
 0.5 0.25 per annum on the first $150,000,000 in combined
 market value of all assets
 0.375 0.25 between $150,000,000 and $500,000,000
 0.35 0.175 between $500,000,000 and $750,000,000
 0.325 0.16 between $750,000,000 and $1,000,000,000
 0.3 0.15 between $1,000,000,000 and $1,250,000,000
 0.275 0.14 all over $1,250,000,000

At the date of the settlement hearing, the assets had a value of $771,000,000.
By other provisions of the settlement the trustee will not seek any increase in its management fees or recurring charges until it first submits such proposed increase to the stockholders of the concerned fund for their approval. Furthermore, the trustee will not, prior to April 7, 1971, seek any increase except in the event of a substantial change in circumstances and then only after first obtaining the court's approval to the submission of the proposed increase to the stockholders.
On January 18, 1963, before this settlement was negotiated, the certificate holders voted overwhelmingly to approve a new underwriting agreement between the Trustee and Keystone-Boston. They ratified and approved past underwriting contracts and transactions and also ratified and approved the payments of management fees *551 and recurring charges that had previously been made pursuant to the provisions of the trust agreements. This action, inter alia, was relied upon heavily by the defendants as an answer to the complaint.
At a stockholder-noticed hearing on the settlement, Sidney C. and Janice R. Kleinman ("objectors"), shareholders in one of the trusts involved, objected to the provisions of the settlement. All parties were afforded an opportunity to offer evidence, and this is the decision of the court on the entire record.
As has been stated many times, the court in passing upon a settlement is required to consider and weigh the claims and possible defenses and to exercise a business judgment in determining whether the proposal is reasonable. See Krinsky v. Helfand, 38 Del.Ch. 553, 156 A.2d 90.
I pass over the claim of the proponents of the settlement that the objectors lack standing to object because they allegedly voted to ratify the matters considered at the January 18, 1963 meeting of the stockholders. I turn therefore to the objections that are raised herein.
The objectors' basis contention is that the Trustee and Adviser under the structural arrangement of the Keystone Funds are one and the same, thereby creating an improper conflict-of-interest situation which, they contend, will be perpetuated by the settlement. Clearly, when these trusts were created, the Trustee and the Adviser were one and the same. That was patently apparent to any prospective stockholder who took the trouble to make the most cursory examination of the matter. Thus, it is equally obvious that the compensation arrangement between the Trustee and Adviser was in no sense a negotiated arrangement. Once again, this was evident to any prospective investor. Certainly there is nothing in the common law which invalidates such an arrangement. The objectors point to certain trust principles applicable to "self-dealing" trustees. But these principles have no application to this contractual arrangement, which was part of what the investor was "buying" when he invested.
The objectors next suggest that the structural arrangement was contrary to the Investment Company Act of 1940. Broadly speaking, they contend that the Investment Company Act was intended to provide institutional safeguards to protect fund investors against self-dealing by persons who for all practical purposes were in control of fund operations. They go on to say therefore that the Keystone arrangement which places Keystone as Trustee in absolute control and fails to afford any independent representation for fund investors is necessarily defective. Parenthetically, the plaintiffs in this suit initially charged that the management fee arrangement violated Section 15 of the Act, 15 U.S.C.A. § 80a-15, but they subsequently abandoned that claim. The objectors do not suggest here that that claim was meritorious.
Turning then to the objectors' claim that the structure of the Keystone Funds is inherently in violation of the Act, I can only say that they have failed to point to any provisions of the Act which could be said with any confidence to strike down such structure. I think the Act clearly recognizes and permits the existence of funds organized as business trusts, and these of course are subject to the same presumed defects as the Keystone Funds. As counsel for the plaintiffs say, the objectors' quarrel is with the fact that Congress did not see fit to enact legislation striking down this very type of arrangement. To disapprove the settlement on this basis and to appoint a receiver to operate the fund until it is freed of its "conflict of interest", as objectors' suggest, would invite an excursion into a judicial "never-never" land.
The objectors next assert that the management and recurring charges as proposed in the settlement are excessive and unreasonable. The objectors rely on the testimony of their expert witness who purported *552 to show that the trustee earned from these sources in a one-year period over twice its net invested capital. Thus, they say, the Trustee's return on net worth ranged from 45% in 1960 to 212% in 1962. It is said that by applying the proposed fee schedule to 1962, the Trustee's return would still be 190%. The objectors and their expert witness both contend that such "returns" were and are excessive. They say moreover that they have resulted from lack of competitive forces in the industry in general (because of the management company's built-in control) and a continuing breach of fiduciary duty in this case by a self-dealing trustee.
Though I assume without deciding that the objectors' percentages are correct, the objectors nevertheless concede that the rate of return to the trustee is not out of line with that paid management companies in the mutual fund field generally. Their claim is that it is excessive when compared, under the same test, with a broader spectrum of business activity. While not decisive, it is certainly pertinent that in an activity of the magnitude of the mutual fund business Keystone-trustee is "in line" in its rate of return. Moreover, it is not unusual for service companies to make large profits on unusually small amounts of invested capital. See Saxe v. Brady (Del.Ch.) 184 A.2d 602.
As to the objectors' contention that the "excessive return" reflects lack of competitive forces in the field, I can only say that the legal format involved is not illegal and if there is to be "regulation" of this so-called "built-in" control, it must come from the legislative branch unless it results in the violation of some positive principle of law, such as that applicable to a waste of assets. These observations are equally applicable to the contention that the allegedly excessive profits flow from a breach of duty by a self-dealing trustee.
The objectors question the benefit to the fund of proposed settlement. There is no substantial benefit here until the assets of the Funds exceed $500,000,000. At current fund asset levels the saving would be about $250,000 a year. Of course, if and as the funds grow there would be additional savings. The objectors say the other benefits, e. g., the submission for stockholder approval of any future proposal to increase rates, are illusory. I am inclined to agree that these benefits are not too great in view of the realities. It would be somewhat more meaningful if mechanics were provided by which the stockholders could initiate a reduction in the management and recurring fees themselves. However, I do not agree with objectors' assertion that the described changes are "illusory" because the shareholders already have the right to approve or disapprove the management fee. This is not the case at least so long as the fees are not greater than those provided in the trust agreements.
Next, the objectors say the purported ratification by the stockholders should not be considered here because of the concealment of a material fact in the proxy statements. The fact allegedly concealed was "that the management of the Funds, Adviser, Trustee and the underwriter were one and the same". They say that there was also a failure to show that the complaint charged the trustee with a continuing breach of its fiduciary duties. These contentions are without substance. The basic relationship was amply disclosed and I can find no violation of a rule of the SEC.
I therefore conclude that the proxy material was not such that the stockholder action should be ignored. The objectors say the ratification had to be unanimous and that it was not. I do not assume that ratification is decisive of the pending matter. However, it is a fact entitled to great weight in passing on the fairness of the settlement. See Manacher v. Reynolds (Del.Ch.) 165 A. 2d 741.
The objectors next argue that the ratification, even if valid, is not binding on those shareholders who voted against the ratification or who did not vote at all. This contention *553 misses the mark. The court is merely using the ratification as a fact, along with other facts, which is entitled to weight in passing upon the fairness of the settlement. The approved settlement will be binding on all the shareholders regardless of their voting record at the January meeting.
Finally, the objectors argue that the proponents of the settlement have failed to carry their burden of demonstrating the fairness, reasonableness, and adequacy of the purported settlement. Assuming without deciding that the proponents of the settlement have the burden here, what does the record show? Preliminarily the court has had a substantial "exposure" to this case and is cognizant of the difficulties plaintiffs would face if the matter were to proceed to a final hearing. For example, on the claims of excessiveness with respect to the management and recurring charges, the plaintiffs are confronted with this court's decision in Saxe v. Brady, above, which indicated, inter alia, the difficulty of establishing the point at which such payments become "legally excessive". There was also the important stockholder action in January ratifying the actions under attack including the underwriting agreements. The effect of this action on the issue of excessive compensation was clearly detrimental to plaintiffs' case. The very substantial problems confronting plaintiff in connection with the underwriting contract issue are not to be minimized. Thus, the right to recover damages even if the underwriting agreement were finally declared to be void is by no means clear.
The objectors seem to suggest that the record of the case made prior to the settlement hearing is not relevant to the determination of the issues here. This is not so. The objectors seem to argue that the alleged breach of fiduciary duty required the proponents of the settlement to offer "more" evidence than they did. The record before the court is quite adequate for present purposes.
The court concludes therefore, as a matter of business judgment, that the settlement is fair and reasonable in the present setting and will be approved. I note that it is not entirely clear, as a matter of mechanics, how the pertinent settlement terms become part of the trust agreements. I assume that matter will be appropriately covered in the order. Also, it is, of course, clear that I am approving only the settlement of this lawsuit.
Present order on notice.