Marjorie T. Rome et al., Objectants below, Appellants,

*vs.*

Norman H. Archer, Plaintiff below, Appellee,

and

Walter L. Morgan et al., Defendants below, Appellees.

Molly Layman, Objectant below, Appellant,

*vs.*

Norman H. Archer, Plaintiff below, Appellee,

and

Walter L. Morgan et al., Defendants below, Appellees.

Ruth Blum, Objectant below, Appellant,

*vs.*

Norman H. Archer, Plaintiff below, Appellee,

and

Walter L. Morgan et al., Defendants below, Appellees.

*Supreme Court, on appeal, January 14, 1964.*

*F. Alton Tybout,* Wilmington, and *Edwin P. Rome,* of Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., for objectants below, appellants.

*Irving Morris,* of Cohen & Morris, Wilmington, and *Abraham L. Pomerantz,* New York City, for plaintiff below, appellee.

*Robert H. Richards, Jr.,* of Richards, Layton & Finger, Wilmington, for Wellington Fund, Inc., defendant below, appellee.

*Richard F. Corroon, of* Berl, Potter & Anderson, Wilmington, and *Daniel Mungall, Jr.,* of Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for the remaining defendants below, appellees.

*L. Coleman Dorsey,* Wilmington, and *Lawrence Milberg,* New York City, for objectant below, appellant.

*Abraham Hoffman,* Wilmington, and *Abraham Markowitz,* New York City, for objectant below, appellant.

TERRY, C. J., and WOLCOTT and CAREY, JJ., sitting.

TERRY, Chief Justice. On July 12, 1960, plaintiff, a shareholder of Wellington Fund, Inc., an open end mutual investment company registered under the *Investment Company Act* of 1940, 15 *U.S.C.A.* § 80a-1 et seq., commenced this derivative action against the individual directors of The Fund, its investment advisor, Wellington Management Company, and the principal underwriter of The Fund, Wellington Company, Inc., and the Wellington Equity Fund, a so-called "Stock Fund" investing primarily in common stocks, and its investment advisor, Wellington Company Ltd. of Delaware.

Wellington Management, The Fund's investment advisor, Wellington Company, its principal underwriter, and Wellington Ltd., the investment advisor of Equity Fund, are closely affiliated with each other and the controlling stock of each is owned directly or indirectly by Walter L. Morgan, one of the individual defendants.

The original complaint alleged that the directors of The Fund had improperly paid excessive compensation to its investment advisor to an extent sufficient to amount to waste of corporate assets; that the investment advisor and principal underwriter dominated and controlled The Fund's Board; that Morgan and certain individual defendants caused the sale to the public of a large block of stock of Wellington Management at a price in excess of the net asset value of the stock thus allegedly capturing an asset of The Fund; and that defendants had wrongfully appropriated for their private purposes and for Equity

Fund the investment services belonging to The Fund which were alleged to be the exclusive property of The Fund.

Thirteen individual defendants, directors of The Fund during various periods, were named but only six, the so-called "affiliated directors" under the *Investment Company Act* of 1940, were served with process and appeared.

Upon appearing, they moved to dismiss certain of the claims and answered the balance denying all charges of wrongdoing and raising the affirmative defenses of the Statute of Limitations, laches and stockholder ratification.

Although initial motions for discovery were filed in the case, the plaintiff did not actually press these motions but awaited the decisions in pending litigation raising some of the same issues. See *Saxe v. Brady*, 40 *Del.Ch.* 474, 184 *A.2d* 602; *Krieger v. Anderson*, 40 *Del. Ch.* 363, 182 *A.2d* 907; *Taussig v. Wellington Fund, D.C.*, 187 *F.Supp.* 179, aff'd. 3 Cir., 313 *F.2d* 472; and *Securities and Exchange Comm. v. Insurance Securities, Inc.*, 9 *Cir.*, 254 *F.2d* 642 cert. den. 358 *U.S.* 823, 79 *S.Ct.* 38, 3 *L.Ed.2d* 64. On October 1, 1962, counsel for the defendants approached plaintiff's counsel with a suggestion that settlement appeared appropriate in view of the decisions reached in those cases referred to. Plaintiff rejected the initial offer of settlement but after subsequent negotiations a settlement agreement was reached in principle on December 7, 1962.

On January 7, 1963, pursuant to the settlement agreement, plaintiff filed a supplemental and amended complaint which, after incorporating the previous contentions, alleged that the actions of the individual and corporate defendants violated certain provisions of the Investment Company Act of 1940, as a result of which the agreement between The Fund and its advisor and underwriter was void.

On January 16, 1963, pursuant to *Rule* 23 of the *Rules of the Court of Chancery, Del.C.Ann.*, the court directed the Secretary of The Fund to inform all shareholders of the terms of the settlement and of their right to appear before the court to note any objections to the settlement. On February 25, 1963, three groups of stockholders appeared and objected to the settlement. In addition, one of the object-

ing parties had served an extensive discovery motion upon plaintiff and defendants, which was returnable at the time fixed for the settlement hearing.

At the hearing, the proponents of the settlement, in addition to submitting certain documentary evidence produced two witnesses: Counsel for defendants, who indicated the nature and extent of the settlement negotiations, and an officer of the investment advisor, who compared the management fee charged by the advisor with the standard prevailing among other mutual funds. The objectants, who produced no evidence at the settlement hearing, renewed their motion for discovery, after making certain deletions from the motion for production of documents. When requested by the court to indicate the specific nature of the evidence sought to be gained by the discovery motion, counsel for the objectants indicated only that the discovery was desired to determine if there were reasonable grounds for opposing the settlement.

The court then indicated that it would allow all parties to file additional matters in support of their contentions. After considering the matters elaborated in these supplemental papers, the court rendered an opinion approving the settlement and denying objectants' motion for discovery. It is from this order that objectants prosecute this appeal.

Essentially the settlement agreement thus approved provided:

(1) The Fund will enter into a new investment advisory agreement with Wellington Management which, in effect, will reduce the advisory fee by approximately $120,000 annually;

(2) For a period of ten years an increase in the advisory fee will not be accepted by Wellington Management except with the approval of The Fund's stockholders and the court;

(3) Stockholders of The Fund may redeem their shares at asset value and reinvest them in Equity Fund free of the customary sales load of 8%;

(4) The settlement will be effective only if the stockholders of The Fund approve the new investment advisory agreement, which was so approved on March 21, 1963;

(5) The case at bar and certain companion suits shall be dismissed;

(6) The named defendants will be released from all claims based on the allegations of the complaint;

(7) Wellington Management will pay the fees and expenses of counsel for the plaintiff in the sum of $150,000.

At the outset, we deem it appropriate to note the appropriate standard that this court must apply in reviewing the decision of the Vice-Chancellor approving the settlement in question. As we stated in *Krinsky v. Helfand,* 38 *Del.Ch.* 553, 156 *A.2d* 90 (*Del.Supreme Ct.,* 1959):

"Our function in the review of such matters is to determine whether or not under all the facts and circumstances the Vice-Chancellor abused his discretion in approving the settlement." (At page 94 of 156 *A.2d*)

In addition, we should also consider the purposes of settlement and the function of a court in either approving or disapproving the compromise of a class action. The law, of course, favors the voluntary settlement of contested issues. Because of the fiduciary character of a class action, the court must participate in the consummation of a settlement to the extent of determining its intrinsic fairness. In determining the fairness of a settlement, however, there is no requirement that opportunity be given the parties to hold a trial as to the issues. To do so would defeat the basic purpose of the settlement of litigation. This court has said:

"If court approval of a settlement necessarily involved a rehearsal of the trial, settlements would be deprived of their principal virtue." *Braun v. Fleming-Hall Tobacco Company,* 33 *Del. Ch.* 246, 92 *A.2d* 302, 310 (*Del.Supreme Ct.,* 1952). See also *Gladstone v. Bennett,* 38 *Del.Ch.* 391, 153 *A.2d* 577 (*Del.Supreme Ct.,* 1959).

Approval of a class action settlement requires more than a cursory scrutiny by the court of the issues presented. The function of the court is discharged, however, when the nature of the claim, the

possible defenses to it, the legal and factual obstacles facing the plain-
tiff in the event of trial are weighed and considered. If, in the light of
these matters, the court approves the settlement as reasonable through
the exercise of sound business judgment, its function as the so-called
third party to the settlement has been discharged. *Braun v. Fleming-
Hall Tobacco Co.,* 33 *Del.Ch.* 246, 92 *A.2d* 302; *Gladstone v. Ben-
nett,* 38 *Del.Ch.* 391, 153 *A.2d* 577; *Forman v. Chesler, Del.,* 167
*A.2d* 442.

On appeal from the approval of a settlement of a derivative
action, the function of this court is more limited in its nature. We do
not review the record to determine the intrinsic fairness of the settle-
ment in the light of our own business judgment. We review the
record solely for the purpose of determining whether or not by the
exercise of his business judgment the Vice Chancellor abused his dis-
cretion. *Krinsky v. Helfand,* 38 *Del.Ch.* 553, 156 *A.2d* 90. To disap-
prove of a settlement found by the Vice-Chancellor to be fair and rea-
sonable, we must find the evidence so strongly to the contrary as to
amount to an abuse of discretion on his part. *Gladstone v. Bennett,*
38 *Del.Ch.* 591, 153 *A.2d* 577. Accordingly, we propose in the exer-
cise of this function to consider *seriatim* the various charges in the
complaint which the objectant appellants argue were improvidently
settled.

The initial contention presented in the two complaints is the
allegation that the Board of Directors which entered into the invest-
ment advisory contract of The Fund was dominated by the investment
advisor and principal underwriter of The Fund. Such domination is
admittedly prohibited by Sections 10(a) and 10(b) (2) of the Invest-
ment Company Act of 1940. Section 47(b) of the Act makes any
contract made in violation of any provision of the Act void. This
provision forms the basis of the objectants' contention. The evidence
was undisputed that certain members of the Board of Directors were
affiliated with the investment advisor and the principal underwriter;
however, their numbers did not reach the quantum prohibited by
either Section 10(a) or 10(b) (2) of the Act. Therefore, it would
be incumbent upon plaintiff upon trial to show that certain additional

director or directors were under the control of the investment advisor or underwriter.

The difficulty of proof of such fact in a court is indicated by Section 2(a) (9) of the Act, which creates a presumption that a natural person is not so controlled. This presumption has been described by both the Securities and Exchange Commission and the Federal Courts as a heavy one, not easily overturned. See *Acampora v. Birkland,* 220 *F.Supp.* 527 (*U.S.D.C.D. Colo.,* 1963).

In addition, Section 2(a) (9) indicates that such a presumption shall exist "until a determination to the contrary made by the Commission by order either on its own motion or on application by an interested person" Therefore, defendants have at least an arguable basis for contending that the Courts are without jurisdiction to overturn the statutory presumption until the Commission had acted. See *Taussig v. Wellington Fund, Incorporated,* 313 *F.2d* 472 (3rd *Cir.,* 1963) (dissenting opinion) ; cert. denied, 374 *U.S.* 806, 83 *S.Ct.* 1695, 10 *L.Ed.2d* 1031 (1963). Irrespective of the statutory presumption, Delaware law recognizes that the directors of a corporation are presumed to act in good faith and that the burden of proof rests on the party attacking their good faith to overturn this presumption. *Isaacs v. Forer,* 39 *Del.Ch.* 105, 159 *A.2d* 295 (1960). Therefore, we conclude that the Vice-Chancellor did not abuse his discretion in determining that the charge of domination was sufficiently doubtful to warrant settlement.

The second contention advanced by objectants is that the directors, dominated by the investment advisor, received inadequate investment services while paying excessive fees for such services. Although the issue of domination has been considered above, for the purpose of this contention, we will assume, arguendo, that plaintiff could have proven domination. The present effective rate charged by the investment advisor is 0.27% of the net asset value of the fund.

In *Saxe v. Brady,* 40 *Del.Ch.* 474, 184 *A.2d* 602 (one of the decisions apparently inducing the settlement), the court found that an effective rate of 0.5% was not subject to judicial attack, and also considered the argument, advanced by plaintiff here, that the rate was also

excessive in view of the large increase in the net asset value of The Fund with allegedly no corresponding increase in service. Objectants, however, argue that the Saxe decision is inappropriate since the instant case also presents causes of actions under the Investment Company Act. However, since the Federal Act sets no maximum fee schedule, the same considerations found relevant in Saxe would probably also be relevant in litigation considering the Investment Company Act of 1940. See *Acampora v. Birkland,* cited *supra,* and *Saminsky v. Abbott,* 194 *A.2d* 549 (*Del.Ch.* 1963).

Objectants then argue that excessive fees are not the only question raised; rather, they contend that the Investment Company Act requires disinterested selection of the best investment advisors, citing *Brown v. Bullock,* 194 *F.Supp.* 207 (*U.S.D.C.S.D.N.Y.,* 1961); affirmed 294 *F.2d* 415 (*2nd Cir.,* 1961). However, the Brown case merely held that the fiduciary duties of investment company directors have a basis in the Investment Company Act as well as in the Common Law.

A meaningful determination of whether or not The Fund was receiving the best possible investment advice would be a comparison of the performance of The Fund with other similar funds; the expense ratio of The Fund to other similar funds; and the fees charged by the investment advisor for its services. Objectants contend that a comparison of the performance of a fund with the common stock average indicates a poor performance of The Fund. However, this is not a meaningful comparison since The Fund is a balanced fund, including a substantial block of conservative securities. The documents introduced by the proponents of the settlement indicate, considering the above facts, that the performance of The Fund compares favorably to other similar funds. The expense ratio of The Fund was shown to be low in comparison to other similar funds, and, as indicated above, the fees charged compared favorably with others.

Objectants, however, contend that regardless of the adequacy of the service, the directors were prohibited from entering into the contract in question by reason of the domination and control of the Board by the investment advisor. As noted above, the supplemental complaint alleging violation of the Investment Company Act

was filed in January, 1963. Since the Federal Act does not contain a statute of limitations, a Court of Equity would normally apply the three year Delaware Statute of Limitations in determining whether or not plaintiff was guilty of laches. See *Klein v. Lionel Corporation,* 130 *F.Supp.* 725 (*U.S.D.C.D.Del.,* 1959, and *Bovay v. H. M. Byllesby & Co., 27 Del.Ch.* 33, 29 *A.2d* 801 1943), thus limiting the space of time applicable to any recovery.

During the three year period immediately prior to the filing of the complaint, the shareholders of The Fund approved the investment contract for two of these three years. The objectants argue that such action was invalid upon the grounds that shareholders cannot ratify a void contract. Such an argument begs the question since Section 15 of the Act establishes two alternative methods of continuing an advisor contract; approval by the directors or approval by the shareholders. See *Saxe v. Brady,* cited supra, and *Taussig v. Wellington Fund,* 187 *F. Supp.* 179 (*U.S.D.C.D.Del.,* 1960) ; affirmed 313 *F.2d* 472 (*3rd Cir.,* 1963) ; cert. denied 374 *U.S.* 806, 83 *S.Ct.* 1695, 10 *L.Ed.2d* 1031 (one of the cases generating the settlement negotiations). Accordingly, even if plaintiff could prove the prohibited domination and control, the amount of recovery actually gained at best would appear to be confined to one year. Accordingly, we hold that the Vice-Chancellor did not abuse his discretion in considering this item of recovery doubtful.

Plaintiff's third original contention was that the sale of a substantial block of the non-voting class A stock of the investment advisor at a price in excess of the net asset value represented a wrongful appropriation of an asset of The Fund, since such inflated price must necessarily represent an expectancy that the advisor contract will be renewed, although the sale automatically terminated the contract under the provisions of the Investment Company Act. Such a contention has been considered and rejected in *Krieger v. Anderson,* 40 *Del.Ch.* 363, 182 *A.2d* 907 and *Securities and Exchange Commission v. Insurance Securities, Inc.,* 254 *F.2d* 642 (*9th Cir.,* 1958) ; cert. denied, 358 *U.S.* 823, 79 *S.Ct.* 38, 3 *L.Ed.2d* 64 (1958) (two of the cases referred to by counsel as inducing settlement).

As a corollary argument, plaintiff contended that the practice of placing orders for the purchase or sale of The Fund portfolio with the same brokers who effect purchases of the shares of The Fund represented wrongful additional compensation to such brokers. No statutory or decisional authority is presented in support of this contention, and accordingly, we believe that both the claim against the sale of the management stock and against the reciprocal practice referred to above were sufficiently doubtful to warrant settlement. Moreover, it seems clear that The Fund lost nothing because of this practice.

Plaintiff's fourth original contention was that the investment advisor was improperly giving investment advice to defendant Equity Fund and that The Fund's contract with the advisor made the investment advice the exclusive property of the Wellington Fund. An identical contention was made in *Taussig v. Wellington Fund, Incorporated*, cited supra, and was rejected by that court. Again, we are constrained to hold that the court had ample justification for considering the claim sufficiently doubtful to warrant settlement.

Objections, however, contend that the Vice-Chancellor abused his discretion in refusing to permit the requested discovery. At the outset, we must deal with the contention that the failure of the proponents to call the defendant directors as witnesses at the settlement hearing justified an inference that their testimony would be adverse to the proponents, citing *Mammoth Oil Company v. United States*, 275 *U.S.* 13, 48 *S.Ct.* 1, 72 *L.Ed.* 137 (1927). Objectants' reliance upon Mammoth Oil Company case is inappropriate, since the Supreme Court merely held that the failure to call a relevant witness to rebut compelling and uncontradicted evidence justified an adverse finding. In the instant case, as noted above, objectants offered no evidence.

In addition, we are constrained to repeat our original observation concerning the purpose of settlement, i.e., to avoid the necessity of extensive litigation. An examination of the motion for discovery and deposition indicates that the objectants desired to take the depositions of six individual defendants and to inspect documentary evidence which apparently encompassed the entire business history of The Fund and that of the corporate defendants. Although requested by the court to specify the evidence to be gained by such

discovery, objectants contended themselves with the contention that the discovery would enable them to determine the adequacy of the settlement. We believe that the Vice-Chancellor did not abuse his discretion in denying the motion for discovery. As stated in *Graham v. Allis-Chambers Manufacturing Company, ante* p. 78, 188 *A.2d* 125:

> "The request sweeps within its embrace what could well be, in the language of the Vice Chancellor 'a vast assemblage of documents' and amounts in effect to a fishing expedition." (At page 132 of 188 *A.2d*)

The only case cited by objectants in which a lower court was reversed for refusal to permit discovery in settlement proceedings is *Cohen v. Young,* 127 *F.2d* 721 (*6th Cir.,* 1942). In Cohen, the objectants wished to pursue one specific item of evidence upon which the entire settlement was based, and the court, in the words of the reviewing tribunal, approved the settlement "upon the sole ground that it was recommended by the attorneys of record." (At page 724 of 127 *F.2d*). In the instant case, as noted above, substantial evidence was produced before the Vice-Chancellor.

It is admittedly true that discovery proceedings have been permitted in behalf of objectors to settlement of class actions. See e. g. *Braun v. Fleming-Hall Tobacco Company,* cited supra, and *Forman v. Chesler,* 167 *A.2d* 442 (*Del.Supreme Ct.,* 1961). However, those cases merely stand for the proposition that an objector who wishes to present specific evidence or who can show the necessity of additional discovery may have the opportunity to present such evidence. In the instant case, no such specific showing was made. In addition, even if the depositions could establish the fact of dominion and control, the legal obstacles noted above would still probably preclude a meaningful recovery by plaintiff in behalf of The Fund.

Turning now to the terms of the settlement, objectors contend that the settlement is inequitable upon three grounds. First, they contend that the settlement represents an inadequate compensation to The Fund. Under the terms of the settlement, the management fee of the investment advisor will be reduced by approximately $120,000 per year, assuming no substantial change in the size of the assets of

The Fund. Such a reduction will continue in effect for at least ten years, unless the court and the stockholders approve an increase. Much controversy has been generated by the Vice-Chancellor's capitalization of this yearly savings. However, since the reduction in fees means a continuous annual saving over a ten year period, some multiplier would be required to estimate the present value of the savings, and we cannot say that the Vice-Chancellor abused his discretion in selecting fifteen as an appropriate multiplier.

With respect to the inclusion of the counsel's fees in the estimated value of the settlement, the objectors contend that such inclusion is impermissible, cited *Certain-Teed Products Corporation v. Topping*, 171 *F.2d* 241, (*2nd Cir.*, 1948). However, this case actually held that a successful plaintiff may deduct a portion of the recovery in a derivative suit for payment of counsel fees before distributing the proceeds to the corporation. Since a successful recovery for the corporation would normally mean that it bears the burden of plaintiff's counsel fees, it would seem only proper to recognize relief from counsel fees in determining the value of the settlement, since under the terms of the settlement, counsel fees are to be paid by certain of the defendants. However, the value to the corporation of the settlement would not be the sum of the capitalized value of the reduction in fees plus the counsel fees; rather, it would be the capitalized value of the annual savings without any deductions for counsel fees, since payment of the fees represents no increased benefit flowing to The Fund. Therefore, we believe that the estimated present value of the settlement to the corporation is approximately $1,800,000 rather than the $2,000,000 found by the Vice-Chancellor.

Objectants contend that this figure is shockingly low when compared to plaintiff's original demand for $25,000,000 in damages. However, as stated in *Forman v. Chesler*, cited supra:

> "The argument based on the supposed gross disparity between the amount demanded * * * and the amount to be paid, depends upon the fallacious contention that the plaintiff proved an 'open-and-shut' case justifying such a recovery." (At page 447 of 167 *A.2d*)

Objectants second area of disagreement with the settlement is in the contention that the settlement was improperly negotiated by directors under the control of the investment advisor. Again, this argument begs the question since it presumes the validity of plaintiff's case, and, if this were a valid objection, settlement of derivative suits would be impossible. In addition, the settlement agreement was ratified by a very large majority of the shareholders and was opposed only by these objectants. See *Saminsky v. Abbott,* cited supra.

Objectants final objection to the settlement is the fact that the settlement purports to release all directors, including those not served in the action. However, since the purpose of settlement is to end the litigation in question, it would be unreasonable to expect the defendants to consent to the settlement without having a favorable expectation that the settlement would end all litigation concerning the issues raised. See *Stella v. Kaiser,* 218, *F.2d* 64 (*2nd Cir.,* 1954); rehearing denied, 221 *F.2d* 115 (*2nd Cir., Cir.,* 1955); cert. denied, 350 *U.S.* 835, 76 *S.Ct.* 71, 100 *L.Ed.* 745 (1955).

The lower court recognized, as do we, our responsibility to insure the fairness and adequacy of the settlement in question in view of the res judicata effect of such settlement. We have reviewed the contentions made by objectants and we are of the opinion that the Vice-Chancellor did not abuse his discretion in approving the settlement.

The order as entered below is affirmed.