**In re AMSTED INDUSTRIES, INCORPORATED LITIGATION.**

Civ. A. No. 8224.

Court of Chancery of Delaware, New Castle County.

Submitted: Dec. 12, 1986.
Decided: Dec. 17, 1986.

Irving Morris of Morris & Rosenthal, Wilmington, for plaintiffs.

Harvey S. Kronfeld, Philadelphia, for plaintiff Barkan.

R. Franklin Balotti, Richards, Layton & Finger, Wilmington, and William Sterling, Wachtell, Lipton, Rosen & Katz, New York City, for defendants Wellington, Loman and Rasmussen.

Thomas J. Allingham, II, Skadden, Arps, Slate, Meagher & Flom, for all other defendants.

## OPINION

ALLEN, Chancellor.

The pending motion to compel answers to discovery requires an elucidation of the standards that govern the availability and scope of discovery when sought in connection with opposition to the approval of a proposed settlement of a class action.

These consolidated actions were commenced as class actions and sought originally to enjoin or rescind a management-sponsored leveraged buyout involving defendant Amsted Industries. Negotiations with certain of the plaintiffs rather rapidly commenced and those negotiations led to an agreement by those plaintiffs permitting the merger to be accomplished without an application for preliminary injunction being made. Indeed, pursuant to the agreement reached, those plaintiffs agreed to seek court approval of the dismissal of the claims asserted with prejudice, purportedly in exchange for merger terms that were more favorable than those that would otherwise be available to Amsted's shareholders. Following negotiation of the agreement, but before effectuation of the merger, plaintiffs engaged in fairly extensive discovery. Their agreement to support the proposed settlement was conditioned upon their continuing to be satisfied with its terms after their discovery was completed. The Court was not asked to approve any of this before the merger was effectuated.

Following effectuation of the cash-out merger, plaintiffs (other than Barkan) and defendants jointly moved for designation of the action as a class action, for an order setting a hearing date on the fairness of the proposed settlement and for approval of a form of notice. Mr. Barkan, a named plaintiff in one of these actions, however, had not participated in the earlier negotiations and objected to setting a hearing date before additional discovery could be had. After argument, the Court set the hearing down for January 6, 1987, certified the action as a class action under Rule 23(b)(1) and ordered that notice, in an approved form, be sent to all class members. Also at that time, defendants moved to stay all discovery by Mr. Barkan, who had recently filed quite extensive and far-ranging discovery requests. The Court refused to grant the stay requested, but sustained defendants' objections to those requests as inappropriately burdensome in light of the procedural setting of the case at that time.

Barkan has now filed less elaborate, although still rather fulsome, discovery. The defendants have responded to some of the 13 interrogatories propounded and produced a large number of documents (all of the discovery made in each of the consolidated cases having previously been available to Mr. Barkan). Defendants have not responded to any of the 171 requests for admissions recently filed by Mr. Barkan. Barkan has moved for an order compelling

responses to his latest wave of discovery requests.

## I.

■ Resolution of the pending application requires as a first step identification of the applicable legal test. Customarily, where the question presented involves the scope of permissible discovery, that test is set forth in Rule 26(b) of the Rules of the Court of Chancery.[1] However, as the purpose of a hearing on the fairness of a proposed settlement of a class action is not the final determination of the merits of claims or defenses asserted in such litigation, *see, e.g., Polk v. Good,* Del.Supr., 507 A.2d 531, 536 (1986), but, rather, an assessment of the overall fairness of the compromise, the full scope of discovery afforded by Rule 26(b), which is designed to place a litigant in position to litigate his claims at trial, is not appropriate in this setting.

Rather, more limited and targeted discovery, if any, is appropriate where the issue is whether a proposed compromise and settlement should be approved. But what legal standard determines when additional discovery should be permitted in this setting and how extensive such additional discovery should be when appropriate?

■ We start with the recognition that the Court's function in the setting of a hearing on the fairness of a settlement is to protect the interests of absent class members. *See, e.g., Girsh v. Jepson,* 521 F.2d 153, 157 (3rd Cir.1975). To that end the Court will exercise its own business judgment on the fairness and reasonableness of the proposal. As our Supreme Court has recently noted:

> Under *Rome* [*v. Archer,* Del.Supr., 197 A.2d 49, 53 (1964)], the Court's function is to consider the nature of the claim, the possible defenses thereto, the legal and factual circumstances of the case and then to apply its own business judgment

in deciding whether the settlement is reasonable in light of these factors.

*Polk v. Good,* 507 A.2d at 535. The Court must therefore evaluate in some fashion the likelihood of success of the claims, the amount or value of any judgment that ultimately may be achieved and the expense and delay that litigation through trial and possible appeal would entail.

■ But in exercising this judgment a trial court must—just as the representative plaintiff, any objector, or a reviewing court must—do so on less than complete information. Otherwise, the goal of encouraging the good faith compromise and settling of disputes short of a full trial would be defeated. Accordingly, any judgment concerning a proposed settlement initially involves two substantive questions: (1) does one know enough about the strengths and weaknesses of the claims and about any defenses to sensibly and competently evaluate the value of the claims and (2) does the proposal being evaluated represent a fair and reasonable judgment concerning the value of those claims, given what one knows.

These are questions that must be answered by anyone exercising a judgment on the fairness and reasonableness of a proposed settlement. A court, whether the trial court in the first instance or a reviewing court, may in exercising this judgment recognize that Rule 23(a) provides certain comfort to it. That is, the trial court will have already determined that the representative party satisfies the standards of Rule 23(a) and, thus, it may safely conclude that any settlement proposed by such a plaintiff, if negotiated in good faith, represents at least one rational view of a fair and reasonable settlement.

■ Thus, in making its own evaluation of a settlement, a court, necessarily operating on less than full information, relies in part on the good faith of the representative party and in part on their competence in

---

1. Generally, Rule 26(b)(1) permits parties to obtain discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Moreover, "it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

making the two substantive decisions set out above.

■ These observations, taken together with the policy of our law that encourages compromise and settlement of claims, lead me to the following generalization. If a representative party's determination to negotiate and recommend a settlement is made (1) in *good faith* and (2) upon *competent information* then such a proposed settlement should ordinarily be approved if (3) it appears fair and reasonable to the court *based upon what the representative plaintiff and his counsel knew* about the claims and defenses *at the time the settlement accord was reached* (or when it became binding on the representative). The implications for discovery in the settlement setting of this generalization are set forth below.

■ First, as a general matter, reasonable discovery when timely requested should be permitted to test the *good faith* of the class representative, at least if there is any basis to suppose lack of good faith. Thus, for example, inquiry into how negotiations came about, how they proceeded, and when various elements of the proposal (including attorneys fees) were agreed upon and why should generally be permitted.[2] *See In Re General Motors Corporation Engine Interchange Litigation*, 594 F.2d 1106, 1123 (7th Cir.1979). A major, perhaps the principal, aim of Paragraph (e) of Rule 23 is to protect against any temptation that a class representative or his attorney may feel to settle class claims for less than the maximum then achievable, in exchange for benefits to flow directly or indirectly to the representative or his agents alone. *Wied v. Valhi, Inc.*, Del.Supr., 466 A.2d 9, 15 (1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984).

■ Because the Court, while exercising a judgment of it own, in this setting must depend to some extent upon the litigation judgments of the class representative and his counsel, it is essential that the Court and the class members be, at a minimum, content that such persons have proceeded at all times in good faith, with the single goal of protecting class interests. Accordingly, discovery into that subject may be expected to be more readily permitted, in this context, than discovery into other areas.

■ Second, it is not, however, a sufficient safeguard to absentees that the representative plaintiff has proceeded in good faith; it is also important to such persons that the class representative has proceeded *competently*. In a typical case, an interested person may appropriately evaluate the competency of both (1) the judgment to engage in negotiations at a particular point in the litigation process ("timing") and (2) the judgment to recommend the particular settlement negotiated, by reviewing the court file in the case, all discovery that has already been taken and any other pertinent information generally available (and thus available to the class representative and his counsel). *See Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974). Review of such materials should place an objector in the same position as the class representative who has proceeded in good faith when that representative elected to recommend the settlement to the Court. If that decision, then, is one that falls beyond the range of reasonable, good faith judgment, access to such materials alone ought to be sufficient in most instances to demonstrate it.

■ Where a competent judgment with respect to timing has been made, an objector should ordinarily not be afforded further discovery on the merits of the claims or the validity of the defenses. In such a setting, an objector is free to argue that based upon what the record shows, the benefit to the class is inadequate. Where an objector can make no *prima facie* showing of bad faith or conflicting interests and where an objector cannot show that a class representative has failed to properly explore through discovery or otherwise the merits of the case and defenses before entering into negotiations, all one is left with on a discovery application is a dis-

---

**2.** Whether a lawyer-client or work-product privilege is applicable in any particular instance is a question that cannot be addressed except in a specific setting.

agreement as to how much discovery should be accomplished before settlement negotiations are pursued. In such a situation, the policy favoring compromise and settlement of claims must prevail to preclude further merits discovery pending court review of the substance of the proposed settlement. *See, e.g., Malchman v. Davis,* 761 F.2d 893 (2d Cir.1985); *Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir. 1982); *Fins v. Pearlman,* Del.Supr., 424 A.2d 305, 209 n. 4 (1980).

■ Where, however, from a review of the pleading and all discovery taken, an objector persuades the Court that a competent judgment could not yet have been made concerning the value of the claims, then an objector should be afforded the right to take further discovery on the merits of the claims and defenses in order to demonstrate that, based upon what one should have known before attempting to settle the case, the proposed settlement is not fair and adequate. *Girsh v. Jepson,* 521 F.2d 153 (discovery by objector permitted where record insufficient to determine fairness and adequacy of settlement).

■ In summary, if a class representative and his attorney have acted throughout in good faith and with competence, then the Court (and the absent class members including objectors) should be in a position to evaluate the fairness of the settlement based upon discovery already taken in the case. Objectors should be generally permitted, when they make timely application, to inquire into the good faith of the parties to the negotiating process and, in the unusual case where they persuade the Court that the class representative has not made a competent decision to open negotiations, then narrow, specific and targeted further discovery on the merits should be permitted.

With these principles in mind, I turn to discussion of the specific discovery issue on this motion.

## II.

■ First, as to discovery into the negotiation process, plaintiff Barkan has not yet shown (nor has he attempted to show) that the parties who negotiated the proposed settlement were not acting in good faith with the intent to maximize the interests of the class. Nevertheless, defendants have volunteered to "produce documents concerning ... (14) the negotiations that produced the settlement ... [and] (16) all communications with Charles Hurwitz (a large holder of Amsted stock) and his affiliates regarding litigation against defendants by them, their financial condition, or any proposal or statement regarding Amsted or the LBO...."

These materials should be fully adequate to permit Mr. Barkan effectively to evaluate the good faith of those who negotiated the proposed settlement and to fashion and support any argument on that subject that he may believe is appropriate to make.

As to the competence of the decision to negotiate a settlement and of the decision to recommend this proposal, discovery of materials relating to that two-part subject is also affected by the voluntary agreement to produce additional materials. Defendants have stated that they yesterday produced "documents concerning, *inter alia:*"

(2) every meeting of the Special Committee, including a detailed description of all subject matters discussed; (3) every document furnished by the Special Committee to Salomon Brothers, its investment advisor; (4) every document furnished by the LBO Group to its financial advisors, Goldman Sachs & Co.; (5) any document relating to any valuation made by Goldman Sachs & Co. of Amsted; (6) any document provided to any prospective lender in connection with the LBO; (7) any communication relating to any estimate by management, Price Waterhouse & Co. or Arthur D. Little Evaluation Inc. of the fair market value of Amsted's assets and liabilities, and any possible action by the Amsted Board or Special Committee regarding any such estimate; (8) all documents filed with the SEC in connection with the LBO; (9) the date and duration of every Board and Special committee meeting regarding the LBO; (10) the timing of the Special Committee's actions respecting the LBO; (11)

the Board's beliefs regarding the liquidation value of Amsted, and all facts and documents relating to those beliefs; (12) the timing and circumstances of the Board's receipt of any management study of the fair market value of the assets of Amsted; (13) any questions raised by Amsted directors regarding management's asset value estimate; (14) the negotiations that produced the settlement that all parties except plaintiff Barkan have asked this Court to approve; (15) all minutes of Board and Special Committee meetings, and all documents presented or referred to at such meetings; (16) all communications with Charles Hurwitz (a large holder of Amsted stock) and his affiliates regarding litigation against defendants by them, their financial condition, or any proposal or statement regarding Amsted or the LBO; (17) any dealings or relationships between any defendant and Salomon Brothers; (18) any dealings or relationships between any Special Committee member and Amsted or any member of the LBO Group; (19) any offer by anyone to contribute funds for the LBO; (20) any solicitation of proposals to acquire all or part of Amsted; (21) Amsted's financial results for the fiscal year ended September 30, 1986; (22) Salomon Brothers' role in connection with the LBO; and (23) detailed information concerning the relationship of Amsted's pension plan assets to the financing of the LBO, Amsted's continuing efforts to ascertain the amount of the overfunding of the terminating plans, the contemplated uses of excess pension plan assets and the tax questions related to the recovery of excess pension plan assets.

This additional discovery, which amounts to several thousands of pages of documents, would appear to be far more than adequate to permit a competent assessment of the merits of the proposed settlement.

 However, putting aside this voluntary production, the pending discovery requests are not supported by documented argument to the effect that the representatives who negotiated the proposed settlement, at the time they became finally bound by it (subject to court approval), did

not possess enough information concerning the claims to make a competent judgment concerning their value. In the absence of such a presentation, I cannot conclude that further discovery on the merits of the claims and defenses is appropriate. In this setting I would expect an objector seeking discovery to take a targeted, well-defined approach to specific discovery supported by a cogent argument as to why the specific information sought should have been known before a settlement was negotiated —that, in other words, such discovery is necessary in order to place any person who must competently recommend or assess the fairness of a proposed settlement in a position to do so. Mr. Barkan has not taken that tack. Rather, he continues to press for discovery so wide-ranging and extensive as to suggest that in fact he is searching for some basis, any basis, to oppose the settlement.

In all events, in light of the showing made by Barkan, I conclude that the discovery that is voluntarily being made is more than adequate for present purposes. Mr. Barkan's motion will be denied. IT IS SO ORDERED.