HYMAN L. RUTMAN,
Appellant,

*vs.*

SIMON KAMINSKY, Plaintiff Below,
ALBERT F. BERINGER *et al.,* Defendants Below,
Appellees.

HYMAN L. RUTMAN,
Appellant,

*vs.*

JACK PALLATZ et al., Plaintiffs Below, TENNECO MANUFACTURING
COMPANY *et al.,* Defendants Below,
Appellees.

*Supreme Court, On Appeal, January 13, 1967.*

*Russell J. Willard, Jr.,* of Hastings, Taylor & Willard, *L. Coleman Dorsey,* of Dorsey & Dorsey, Wilmington, and *Samuel Kalmanash,* New York City, for objector below, appellant.

*William E. Taylor, Jr.,* Wilmington, and *Abraham L. Pomerantz,* of Pomerantz, Levy, Haudek & Block, New York City, for Simon Kaminsky, plaintiff below, appellee.

*Irving Morris,* of Cohen, Morris & Rosenthal, Wilmington, and *Milton Paulson,* New York City, for Jack Pallatz, and others, plaintiffs below, appellees.

*Henry M. Canby* and *Richard J. Abrams,* of Richards, Layton & Finger, Wilmington, and *Leslie Kirsch,* New York City, for Tenneco Manufacturing Co., and others, defendants below, appellees.

Wolcott, C. J. and Carey and Herrmann, JJ., sitting.

Herrmann, Justice: The appellant urges us to set aside the approval by the Chancery Court of the settlement of stockholders' derivative actions to which the appellant objected.

By two derivative actions in the Chancery Court (and two companion actions in the U. S. District Court for the District of Delaware) stockholders of Cary Chemicals, Inc., a Delaware corporation, (hereinafter "Cary") attacked the proposed merger of Cary into Tenneco Manufacturing Company, a Delaware corporation, (hereinafter "Tenneco M").

The gravamen of the complaints, material to this appeal, relates to a contract dated February 11, 1961, by which Cary agreed to purchase from Tenneco M large quantities of vinylchloride monomer (hereinafter "VCM"), the basic raw material used in Cary's manufacturing process. The contract provided for adjustment of the base price upward or downward, on the basis of price indices published by the U. S. Government, and adjustment downward if Cary was offered VCM at lower prices by a third party under a contract containing like terms and conditions. The contract provided a source of supply of VCM for a period of ten years escalating from minimal annual purchases to 180,000,000 pounds per annum by 1966 and thereafter. The contract was entered into in conjunction with a loan of over $7,000,000 by Tenneco M to Cary, financial assistance much needed at the time. Other agreements were entered into concurrently, one of which gave Cary an option to purchase a certain amount of the stock of Tenneco M based upon the amount of VCM it purchased. On April 12, 1965, the date of the stockholders' meeting called for the purpose of approving the proposed merger, 67.4% of the outstanding stock of Cary was held by Tenneco Corporation, of which Tenneco M was a wholly owned subsidiary. As of that date, Tenneco controlled Cary by interlocking directorates.

Generally, the complaints in the derivative actions alleged that the contract of February 1961 required Cary to purchase its requirements of VCM from Tenneco M at inflated prices, which resulted in Cary's

operating at a loss and Tenneco M's operating at a profit, thereby depressing the value of the Cary stock and enhancing the value of the Tenneco M stock; that this shifting of profits resulted in the merger being made on the basis of the exchange of ten shares of Cary stock for one share of Tenneco M stock, whereas the merger should have been on the basis of a one for one ratio. More specifically, the complaints asserted that in charging Cary approximately 8.2 cents per pound for VCM, Tenneco M overcharged about 1 cent per pound; that during the year 1964 Tenneco M sold to Cary approximately 134,000,000 pounds; that the overcharge during that year, therefore, was $1,340,000; that by reason thereof, instead of the loss of $1,300,000 shown by Cary for 1964 and the resulting profit to Tenneco M, all considered in the establishment of the ratio of exchange for the merger, Cary should have shown a profit of over $900,000 and the profit of Tenneco M should have been diminished by the $1,340,000 overcharge.[1] On these basic assertions, the complaining stockholders claimed that the terms of the merger were unfair to Cary stockholders and that the proxy statement was false and misleading.

The Court of Chancery denied the motions to restrain the merger, as did the U. S. District Court in the companion cases pending there. Thereafter, interrogatories were propounded and answered, documents were examined, and depositions were taken for use in all four cases. Before the merits of the cases were reached, however, settlement discussions, involving counsel in all four cases, were commenced and a settlement agreement was negotiated and executed. The proposed settlement, as submitted to both Courts, provided for the payment by Tenneco M of $422,515.60, of which the sum of $103,500 was earmarked for legal fees and costs. The appellant, owner of 2,000 shares of the 1,056,829 shares of Cary publicly held at the time of the merger, filed objections in both Courts, stating under oath his reasons for opposing the settlement. The bases of the appellant's objection were generally the same as the allegations of the complaints. A joint hearing on the proposed settlement was held by both Courts. At the hearing, the appellant was present and was represented by counsel. Upon the conclusion of the hearing, the District Court Judge and the Vice Chancellor approved the settlement from the bench, holding it

---

1. The undisputed evidence shows that the net profit of Tenneco M from the VCM operation in 1964 was $16,460.

fair and equitable. This appeal is from the judgment of the Chancery Court approving the settlement.

## I.

The appellant contends that he was denied due process of law and equal protection of the laws in that he was refused the opportunity to testify personally at the settlement hearing.

It appears that during his oral argument regarding the bases of the valuation of Tenneco M, the attorney for the appellant stated that he would "appreciate" it if the appellant were permitted to take the stand, "since he is an attorney, an accountant and a principal stockholder," to "exhibit * * * some of the transactions here"; and, referring to a "conspiracy to depress the stock of Cary", appellant's attorney stated: "* * * if the Court pleases Mr. Rutman would take the stand and give further evidence of that effect." To this the Court replied: "We are not going to try the case here."[2] Thereupon, the appellant's attorney continued his oral argument and apparently abandoned the idea of calling the appellant as a witness, without further comment or application to the Court.

The appellant's position is without merit for two reasons: First, it appears to us that the record shows something less than a direct request to adduce evidence and something less than a direct ruling of denial by the Court below, reviewable upon appeal. Moreover, the appellant's constitutional contentions are made for the first time in this Court. It is settled that questions of this nature, not fairly raised below, will not be considered on appeal. *Cottrell v. Pawcatuck Company,* 36 *Del.Ch.* 169, 128 *A.2d* 225, 233 (1965).

In view of the circumstances and posture of the matter, the authorities relied upon by the appellant, *e. g.,* The New England Division Cases *(Akron, C. & Y. R. Co. v. United States),* 261 *U.S.* 184, 43 *S.Ct.* 270, 67 *L.Ed.* 605 (1923), *Carter v. Kubler,* 320 *U.S.* 243, 64 *S.Ct.* 1, 88 *L.Ed.* 26 (1943), *Jacobsen v. Jacobsen,* 75 *U.S.App. D.C.* 223, 126 *F.2d* 13 (1942), *Jannuzzio v. Hackett,* 32 *Del.Ch.* 163, 82 *A.2d* 730 (1951), *Aprile v. State,* 1 *Storey* 215, 220, 143 *A.2d* 739 (1958), and *Cohen v. Young* (6 *Cir.,* 1942) 127 *F.2d* 721, are inapposite.

2. See *Gladstone v. Bennett,* 38 *Del.Ch.* 391, 153 *A.2d* 577 (1959) ; *Rome v. Archer,* 41 *Del.Ch.* 404, 197 *A.2d* 49 (1964).

## II.

The crux of the appellant's second ground of appeal is that the "facts presented to the Court below, in view of the dominant control of Cary by Tenneco M, warranted said Court's disapproval of the settlement proposed."

■ The statement of the contention demonstrates, we think, a basic misconception of the scope of appellate review in a case of this kind. We recently restated the function of this Court, in an appeal such as this, in *Goodman v. Futrovsky, Del.,* 213 *A.2d* 899 (1965):

> "We are concerned in this appeal with review of the approval of a settlement of a derivative action. The function of this Court in such a review is merely to determine whether or not the court below has committed an act of judicial indiscretion in approving the settlement in the exercise of business judgment. We do not exercise our own judgment to determine anew the question of the intrinsic fairness of the settlement. * * *."

Approaching the problem in the light of this limitation, we are satisfied that the appellant has failed to demonstrate that the Vice Chancellor, acting in concert with the U. S. District Court Judge, abused his judicial discretion in approving the settlement.

■ The appellant's keystone argument is that the settlement should have been disapproved because, by reason of its subsequent control, Tenneco M had a duty to sell VCM to Cary for at least one cent per pound less than the contract price. This contention is ineffective, as fulfillment of the appellant's burden of showing abuse of judicial discretion, because it disregards the undisputed facts that the contract of February 1961 was a *bona fide,* arms'-length transaction and that the basic contract price was the lowest being paid by Cary on the open market at the time of the contract.

The appellant attempts to bulwark his argument in this regard by reference to certain competitive spot purchases Cary was able to make, after the contract, at seven cents per pound; and by reference to an engineering report stating that Cary could purchase VCM from other sources at the lower price. These arguments also are ineffective in the fulfillment of the appellant's burden of showing abuse of judicial

discretion. There was evidence from which it could be found that spot purchases of small quantities had no relevancy to the price of a guaranteed multi-million pound supply escalating over a period of 10 years; and as to the engineering report, there was evidence from which it could be found that there was a lack of uncommitted industry capacity to supply the large quantities and fulfill the delivery schedules required under the contract.

■ Finally, appellant points to Cary's option to purchase a portion of the outstanding stock of Tenneco M at book value; and appellant argues that no consideration was given to the value of that option in the formulation of the proposed merger. This contention is ineffective because there was evidence from which it could be found that Cary was financially unable to exercise the option and that, since the option was unassignable, it had little or no value in the determination of the ratio of exchange.

■ In the final analysis, the basic question before the Court in scrutinizing this settlement was the fairness of the ratio of exchange offered to the Cary stockholders. There was expert evidence adduced by the corporation to the effect that the ratio of exchange would be fair even if Tenneco M had sold VCM to Cary at the lower price; there was no comparable evidence to the contrary. The Chancery Court was warranted in accepting the corporation's view of the matter.

## III.

■■ As his final ground of appeal, the appellant attacks the release to be delivered under the settlement agreement to Cary's former board chairman and president who was named a party defendant in the derivative actions. Two grounds are assigned: First, it is said that the release is too general. We find no merit in this contention because the proposed release is in the usual form, limited to matters contemplated by the complaints, releasing the former officer from "any matter related to any of the acts or transactions described in the complaints in the said actions." Secondly, the release is attacked on the ground that it is without consideration. This, too, lacks merit. The consideration for a release such as this is the settlement itself; it is immaterial that no additional consideration flows from the officer. See *Hoffman v. Dann, Del.,* 205 *A.2d* 343 (1964).

The appellant has failed to demonstrate that the Chancery Court, in approving the settlement, violated sound business judgment to an extent amounting to an abuse of judicial discretion. Therefore, the judgment below is affirmed.