### In re LOUISIANA–PACIFIC CORP. DERIVATIVE LITIGATION.

#### Civil Action No. 14322.

Court of Chancery of Delaware,
New Castle County.

Submitted: April 17, 1997.
Decided: May 2, 1997.

**55.** *Id.*

**56.** Pls. Reply to Defs. Opposition to Pls.App. for Atty Fees, at 19.

Norman M. Monhait, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington; of counsel: Abbey, Gardy & Squitieri, L.L.P.; Wolf Popper, L.L.P., Bernstein Liebhard & Lifshitz, New York City, for Plaintiffs.

Charles F. Richards, Jr., Daniel A. Dreisbach, Matthew J. Ferretti, Robert J. Steam, Jr., of Richards, Layton & Finger, Wilmington, for Defendants Pierre S. DuPont IV, Donald R. Kayser, Francine I. Neff, Bonnie Guiton Hill and Charles E. Yeager.

ALLEN, Chancellor.

Following the April 17, 1997 hearing on the fairness and adequacy of a proposed settlement of this derivative lawsuit, the court ruled that the terms of the settlement were fair and reasonable and that the settlement would be approved. The gist of the complaint was that the defendants, who constituted the senior officers and board of Louisiana–Pacific Corporation,had violated their fiduciary duty of care in permitting the operations of the corporation to be such as to give rise to substantial liabilities for violation of applicable laws and regulations governing the environmental impacts of industrial or commercial activities. In response to the enforcement actions taken by various governmental actors and to various shareholder litigation, including this suit, the board of directors caused the chief executive officer of the company to be replaced, and instigated other changes in board operation. These changes were sufficient in the judgment of this court to justify the dismissal of this suit and the award of reasonable attorney's fees.

What remains for decision is the language of the judgment to be entered.

The parties have agreed to a form of judgment that includes a paragraph that is in substance a release. The "release" reaches all claims belonging (in simplified terms) to the corporation *or any of its shareholders* that arise or could arise out of the facts alleged. Excluded from the effect of this "judgment/release" is an identified shareholders action under the federal securities acts presently pending in the United States District Court for the District of Oregon. Other than this identified action, it is the express purpose of the language of the "release" paragraph of the proposed judgment to preclude future litigation by any Louisiana–Pacific shareholder of *any claim* possibly held by *such person* which arises out of the facts alleged in the complaint.

Following the hearing, the question whether a release of the type agreed to could be entered by the court was taken under advisement.

The question can be approached from a couple of perspectives, but most fundamental is the question whether this court has a sufficient jurisdictional predicate with respect to absent individuals to enter a judgment that would, according to its terms, determine their rights and preclude assertion of any future claims against the defendant arising out of the same facts or transaction as those that give rise to this case. This is precisely what the express language of the "release" paragraph purports to do.

The proposed judgment purports to affect the rights of all Louisiana–Pacific shareholders. The circumstances in which a state court—which does not enjoy the benefit of nationwide service of process—may effectively bind the interests of absent parties is, of course, a topic that has given rise to some of the monuments of federal jurisprudence. *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) are only the most obvious. Certainly in some actions, of a type that were formerly classified as *in rem* or even *quasi in rem*, the legal presence of property in the forum state together with the doctrine of virtual representation, are

sufficient to bind absent interest holders, so long as constitutionally adequate notice and opportunity to be heard are afforded to such persons. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (establishing what constitutes adequate notice to meet due process requirements sufficient to bind absent *cestu que trust); Hynson v. Drummond Coal Co.*, Del. Ch., 601 A.2d 570 (1991) (holding, in a class action suit, that owning stock in a corporation creates a sufficient nexus between a nonresident shareholder and the jurisdiction of incorporation to bind him to a judicial determination *of rights that attach to that stock* (e.g. does this class of stock have a right to vote), including the right to hold fiduciaries to account providing that notice and opportunity to be heard are provided). Nationwide class actions in state courts are another example of instances in which the interests of an absent party may be constitutionally affected by a state court judgment. What makes binding absent parties in class actions constitutionally acceptable is either that: (1) under the provisions of Chancery Court Rule 23(b)(3), absent class members, in effect, elect not to opt-out of the class and thus can be said effectively to consent to the foreign court exercising jurisdiction over their property (*See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811, 105 S.Ct. 2965, 2974, 86 L.Ed.2d 628 (1985))(holding that an absent member of a Subsection 23(b)(3) class can be bound by the results of litigation about which that member was notified and given an opportunity to be heard), or (2) that under Rule 23(b)(1) or (2) the close identity of interests of the absent class members with those of the members before the court and satisfaction of the Subsection 23(a) criteria are sufficient to satisfy due process of law, so long as notice and opportunity to appear are afforded. While this second proposition is certainly contestable, for the law to hold otherwise would, I suppose, be to make a

talisman of physical presence in an age of global business and digitized information. Thus, in all events, there are circumstances where a state may constitutionally affect the interests of absent individuals.

But where, as here, (1) no party to the litigation shares the property interest of the absentee that is to be affected by the "release", (2) the absentees have not been afforded an opportunity to opt out of the litigation, and (3) in all events, they are to receive directly no consideration in exchange for the "release" of their rights, it seems most elementary that the court would be unauthorized to release the property of the absentees. Items (1) and (3) would independently require that result.

Indeed, I who in expressing the opinion of *Hynson v. Drummond Coal Company*, expressed an aggressive albeit, I believe sound, theory of state court jurisdiction to affect rights of non-residents shareholders, am at a loss to understand how it might be concluded that the court has the constitutional power effectively to "release", adjudicate as settled, or otherwise bar, claims belonging to the absentee shareholders under these circumstances. Were this a class action, at least the theory of virtual representation would be present and the settlement would presumably include some consideration flowing to the class members, which if adequate would justify a release.

Defendants cite a number of instances in which they claim Delaware courts have released individual claims as part of a derivative settlement. About these cases I note the following. First, most of them are either class actions or are suits in which both derivative and class claims are made. Second, candidly, unless a deliberated opinion is produced along with a signed order, this Court will rarely give such orders much precedential weight.[1] Defendants do cite one case,

---

1. There is very good reason in favor of this practice, with which every trial judge is familiar. In the press of work, a busy trial judge inevitably relies upon the work of members of the bar. This reliance is backed up in most other instances by the powerful engine of the advocacy system. Other trained lawyers, with professional duties and economic incentives designed to

check the work of adversaries will supply the court with a balanced view. On settlements these incentives may change. Thus the need exists for independent judicial review under Rule 23 and Rule 23.1. But even though that need is recognized, in fact the court, after evaluating the strengths and weaknesses of the claims and the value of the settlement consideration, may fail on

*Rutman v. Kaminsky,* Del.Supr., 226 A.2d 122, 126 (1967), in which the Supreme Court affirmed over the complaints of a stockholder objector the settlement of a derivative action and upheld the grant of a release that released the defendants "from any matter related to any of the acts or transactions described in the complaint...." The Supreme Court addressed this highly conventional language, (insofar as the scope of a release between litigating parties (and their privities) is concerned) and recognized it as unproblematic: *Rutman* does not, however, address the question of the court's jurisdictional base to effectively authorize the release of (absentee non-party) shareholder claims arising from the same facts out of which the derivative complaint arose. In part this is so because in *Rutman* there *were* pending class actions in the United States District Court for the District of Delaware, which were settled pursuant to the same settlement agreement. Indeed, the two courts apparently held a joint hearing of the fairness of the settlement proposed. Thus there could be no question in that case that the shareholder's individual claims were properly and effectively settled and released, albeit as a technical matter it was the federal court's order and not the Court of Chancery order that had that effect.

In conclusion, for the reasons stated above, I am today entering an order approving this settlement of Louisiana Pacific's claims against the defendants and dismissing the action, but that judgment will not purport to preclude all future assertion of direct claims by any Louisiana–Pacific shareholder which claim is said to arise out of the facts alleged in the complaint in this action. The judgment does, in many words, preclude all persons from asserting, directly or indirectly, that Louisiana–Pacific has any right or claim against any defendant, or any person in privity with a defendant, arising out of the facts alleged in the final complaint.

## FINAL ORDER AND JUDGMENT

A hearing have been held before this Court on April 17, 1997 in the above-captioned action (the "Delaware Consolidated Action"), pursuant to the Court's Order of January 27, 1997 (the "Scheduling Order"), upon the settlement (the "Settlement") proposed in a Stipulation of Settlement, dated January 23, 1997 (the "Stipulation"), which is incorporated herein by reference; the respective parties having appeared by their attorneys of record, the Court having heard and considered evidence in support of the Settlement, an opportunity to be heard having been given to all persons requesting to be heard in accordance with the Scheduling Order, and the entire matter of the Settlement having been heard and considered by the Court;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED this 2nd day of May 1997, that:

1. The form and manner of notice given to the stockholders of Louisiana–Pacific Corporation (the "Company") is hereby determined to have been the best practicable notice under the circumstances and to have been given in full compliance with the requirements of due process and Chancery Court Rule 23.1.

2. The Settlement is approved as fair, reasonable and adequate and shall be consummated by the parties in accordance with its terms and conditions.

3. The Delaware Consolidated Action is dismissed with prejudice and on the merits as to each named defendant, each party to bear its own costs, except as provided herein and in the Stipulation.

4. All claims of the Company, and all rights, demands, causes of action, suits, matters and issues known or unknown by plaintiffs, any present stockholder of the Company and the Company and its predecessors, successors and assigns (and any person claiming by, through, in the right of, or on behalf of the Company by subrogation, assignment or otherwise) of the Company, against any individual defendant hereto, and their predecessors, successors, parents, subsidiaries, counsel, affiliates, insurers and agents, including, without limitation, any past, present or future officers, directors or

its own initiative to read closely a multi-page

judgment that has been agreed to as to form.

employees of defendants and their predecessors, successors, parents, subsidiaries, affiliates, insurers, counsel and agents (collectively the "Released Persons"), which have been, or could have been, asserted in the Actions (as defined in the Stipulation) or in any court of competent jurisdiction or arbitration proceeding, in connection with or that arise now or hereafter out of or relate, in any manner, directly or indirectly, to any acts, facts, transactions, occurrences, conduct or representations alleged in the Actions, including but not limited to all claims, rights, causes of action or matters asserted in, or that could have been asserted in the complaints in the Actions, or that relate or refer to or constitute the subject matter of the Actions, or any fees, expenses or costs incurred in prosecuting, defending or settling the Actions, that have accrued on this date and any disclosures or alleged misrepresentations or omissions that were made or allegedly not made regarding the Claims or as otherwise described or alleged in the Actions (collectively referred to as the "Settled Company Claims") shall be fully, finally and forever compromised, settled, released, discharged and dismissed with prejudice. Nothing herein shall be deemed to release those claims which have been or may in the future be asserted on behalf of a purported class of persons under securities laws in the now pending action in the United States District Court for the District of Oregon captioned *In re Louisiana Pacific Cor. Securities Litigation*, C.A. No. 95–707 JO (the "Securities Litigation") or claims which may arise pursuant to undertakings dated June 26, 28 and 29, 1995 executed by defendants Merle, Eisses and Paul, respectively, and the undertaking dated June 28, 1995 executed by William L. Hebert, an officer of the Company, but only as those undertakings apply to the Securities Litigation.

*5.* The plaintiffs, the Company and all stockholders of the Company are permanently barred and enjoined from commencing or prosecuting 3 any action in any forum asserting any Settled Company Claims, derivatively or in any other capacity, against any Released Persons except to dismiss any pending case of that character.

6. The attorneys for the plaintiffs are awarded attorneys' fees and reimbursement of expenses in the amount of $950,000, which sum the Court finds to be fair and reasonable, to be paid by the Company in accordance with the terms of the Stipulation.

7. This is the final order in this case. Without affecting the finality of this Final Order and Judgment in any way, this Court reserves jurisdiction of all matters relating to the administration and consummation of the Settlement and enforcement of all terms and provisions of the Stipulation.