**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| NORWEST VENTURE PARTNERS XIV, LP, SONYA BROWN and STEW CAMPBELL, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2024-0411-KSJM |
| MICHAEL ANDREACCHI, | ) ) | |
| Defendant. | ) ) | |

**ORDER DENYING APPLICATION FOR CERTIFICATION
OF INTERLOCUTORY APPEAL AND MOTION
FOR PARTIAL FINAL JUDGMENT UNDER RULE 54(b)**

1.      One plaintiff, Norwest Venture Partners XIV, LP ("NVP"), has applied for certification of interlocutory appeal of this court's October 4, 2024 order (the "Application" and the "Order").[1]  NVP moves in the alternative for entry of a partial final judgment under Court of Chancery Rule 54(b).

2.      The plaintiffs filed this suit to enjoin an arbitration proceeding that Defendant Michael Andreacchi initiated in California (the "Arbitration") pursuant to an arbitration provision in his employment agreement (the "Employment Agreement").  The plaintiffs moved for a preliminary injunction in this court, and the Arbitration was stayed briefly to allow the motion to move forward.  Andreacchi moved to dismiss, and the court expedited the proceeding toward a September 12, 2024 hearing on the parties' motions.  Less than a month later, the court issued the Order granting each motion in part.

---

[1] C.A. 2024-0411-KSJM, Docket ("Dkt.") 61 (Application); Dkt. 60 (Order).

3.    Two NVP subsidiaries executed the Employment Agreement; NVP did not.[2]  NVP seeks interlocutory appeal or partial final judgment as to the following portion of the Order, which found that NVP was bound by the arbitration provision in the Employment Agreement although it was not a party to the agreement.

> NVP is bound by the arbitration provision in the Employment Agreement, although it is not a party to the agreement . . . .  California law governs this issue. "[U]nder . . . California law, arbitration is strongly favored, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. California also has a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Ruiz v. Sysco Food Servs.*, 18 Cal. Rptr. 3d 700, 713 (Ct. App. 2004) (cleaned up). These considerations are material here, where the dispute is between California parties concerning a California business and a California employment agreement. Under California law, "an arbitration agreement signed by a subsidiary may bind the parent company only where the party seeking to compel arbitration can show the parent had sufficient control over the subsidiary's activities such that the subsidiary was a mere agent or instrumentality of the parent and the causes of action or claims against the parent arise out of this relationship." *Cohen v. TNP 2008 Participating Notes Program, LLC*, 243 Cal. Rptr. 3d 340, 363 (Ct. App. 2019). Here, NVP is the majority stakeholder of Junk King Holdings, which is the sole member and manager of JKFS, the signatory to the Employment Agreement. As the majority holder of Holdings' preferred units, NVP has the power to choose four of Holdings' five board members. NVP controls Holdings, and through that relationship controls JKFS. The claims against NVP here arise out of its ability

---

[2] NVP owns 27.3 million of Junk King Holdings, LLC's ("JK Holdings") 35 million issued LLC units.  Dkt. 46, Ex. 2 ("JK Holdings LLC Agreement") at Schedule A.  JK Holdings owns 100% of Junk King Franchise Systems, LLC ("JKFS").  Application ¶ 5.  The Employment Agreement was signed by NVP partner and Plaintiff Sonya Brown on behalf of JK Holdings in its capacity as JKFS's sole manager.  Dkt. 1, Ex. 3 ("Employment Agreement") at 10.

to control JKFS. NVP is therefore bound by the Employment Agreement.[3]

4. Supreme Court Rule 42 governs applications for interlocutory appeals, requiring that they be filed within "10 days of the entry of the order from which the appeal is sought."[4] Rule 42 cautions that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[5] This language from Rule 42 serves as an interpretive principle, requiring that the court construe its factors to make interlocutory appeals the exception and not the rule.[6]

5. Rule 42 establishes a two-part test. The court must first determine whether "the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[7] If the substantial-issue requirement is met, then the court must analyze eight factors to determine whether "there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[8]

6. "The substantial issue requirement is met when an interlocutory order decides a main question of law which relates to the merits of the case, and not to

---

[3] Order ¶ 3.

[4] Supr. Ct. R. 42(c)(i).

[5] Supr. Ct. R. 42(b)(ii).

[6] Supr. Ct. R. 42(b)(iii)(H) (stating that "[i]f the balance is uncertain, the trial court should refuse to certify the interlocutory appeal").

[7] Supr. Ct. R. 42(b)(i).

[8] Supr. Ct. R. 42(b)(ii); *see* Supr. Ct. R. 42(b)(iii)(A)–(H).

collateral matters."[9] The issue at the heart of NVP's appeal—whether NVP may be bound by an agreement executed by one of its second-tier subsidiaries—was determinative as to four of the six counts in this case. It was a substantive legal issue and not a "collateral issue" like a discovery matter.[10] Therefore, the Order decided a substantial issue.

7. Certification of interlocutory appeal does not automatically follow from a conclusion that a ruling addresses a substantial issue. It just means that the court moves to the second step of the analysis to determine, based on Rule 42's eight factors, whether there are substantial benefits outweighing the costs of an interlocutory appeal. NVP relies on two of Rule 42's eight factors, arguing that the Order conflicts with previous trial court decisions, and that interlocutory review will serve considerations of justice.[11] Neither factor supports certification.

8. Presumably to get the high court's attention, NVP frames the issue on which trial courts conflict as one of corporate separateness. NVP writes: No "California theory of agency permits a Delaware court to disregard Delaware's long-established principle of corporate separateness[.]"[12] But the question is not whether the court may disregard corporate separateness. Rather, the question is whether it

---

[9] *Sprint Nextel Corp. v iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008) (quoting *Casteldo v. Pittsburgh-Des Moines Steel Co.,* 301 A.2d 87, 87 (Del. 1973)) (internal quotation marks omitted).

[10] *See Stewart v. Wilmington Tr. SP Servs., Inc.,* 2015 WL 1898002, at *2 (Del. Ch. Apr. 27, 2015) (substantial issue existed under Rule 42 where court held defendants' *in pari delicto* defense precluded certain of plaintiff's claims as to several defendants).

[11] Application ¶¶ 26–29.

[12] *Id.* at ¶ 5.

is fair to bind a parent company to an arbitration provision found in an employment agreement signed by its controlled subsidiaries.

9. The Employment Agreement contains a California choice-of-law provision, and so California and not Delaware law governed the court's analysis.[13] For California law, the Order relied on a California appellate decision, *Cohen v. TNP 2008 Participating Notes Program, LLC*. There, the court held that:

> an arbitration agreement signed by a subsidiary may bind the parent company only where the party seeking to compel arbitration can show the parent had sufficient control over the subsidiary's activities such that the subsidiary was a mere agent or instrumentality of the parent and the causes of action or claims against that parent arise out of this relationship.[14]

In *Cohen*, the court found that the parent company sufficiently controlled the signatory subsidiary where the parent sent a letter "on its letterhead . . . that substantially blurred the lines between the two entities and held out [the parent company] . . . as more than just [a] parent[.]"[15] The *Cohen* court also noted that "the entities shared the same address and phone number."[16] *Cohen* is consistent with

---

[13] Employment Agreement § 6(l) ("This is a California contract and shall be construed under and be governed in all respects by the laws of the State of California, without giving effect to the conflict of laws principles of such State."); Order ¶ 3. *See also Pinnacle Fertility Hldgs., LP v. Jain*, 2024 WL 3549100 (Del. Ch. July 26, 2024) (applying California law to a similar dispute where the agreement containing the relevant arbitration provision was subject to California law and the non-signatory plaintiffs seeking to avoid arbitration were Delaware entities).

[14] *Cohen v. TNP 2008 Participating Notes Program, LLC*, 243 Cal. Rptr. 3d 340, 363 (Ct. App. 2019).

[15] *Id.*

[16] *Id.* at 364.

5

other California decisions deploying agency theories to bind non-signatories to arbitration provisions.[17]

10.      NVP contends that *Cohen* is inapposite because Andreacchi "presented no evidence of unusual circumstances in corporate structure, such as a 'purposeful disregard of' [JFKS's] independent existence or that [NVP] controlled [JKFS's] day-to-day operations."[18]   NVP is right, to a degree.   Andreacchi did not provide the materials that formed the bases of the court's decision.   NVP did.

11.      In determining the level of control that NVP exerted over JKFS, the court examined the Employment Agreement, the Arbitration Demand, the Purchase Agreement, and the JK Holdings LLC Agreement—each of which were an exhibit to

---

[17] *See Camacho v. Control Grp. Media Co., LLC*, 2022 WL 3093306, at *6 (S.D. Cal. July 18, 2022), *appeal dismissed*, 2024 WL 3565154 (9th Cir. Apr. 11, 2024) ("Each California case that has found nonsignatories were bound to arbitrate is based on facts that demonstrate, in one way or another, the signatory's implicit authority to act on behalf of the nonsignatory.") (quoting *Jensen v. U-Haul Co. of Cal.*, 226 Cal. Rptr. 3d 797, 804 (Ct. App. 2017)) (internal quotation marks omitted); *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co., Inc.*, 28 Cal. Rptr. 3d 752, 756 (Ct. App. 2005) ("A nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory."); *Cnty. of Contra Costa v. Kaiser Found. Health Plan, Inc.*, 54 Cal. Rptr. 2d 628, 631 (Ct. App. 1996) ("Appellate courts have stated that arbitration agreements are enforced with regularity against nonsignatories.") (collecting cases).

[18] Application ¶ 29. The Application also stated that the court "did not explain . . . how [NVP] exerted 'substantial control' over [JKFS]" and that such a conclusion was impossible to arrive at because the record did not "include any evidence to permit the [c]ourt to make such an analysis." *Id.* at ¶ 18 n.1.

6

NVP's complaint or opening brief in support of its motion for a preliminary injunction.[19]

12.    The following examples from these documents demonstrate the expansive control NVP exerted over JKFS:

- The board of JK Holdings (the "Board") had the "authority, power and discretion to manage and control the business, property and affairs of [JK Holdings] and its Subsidiaries [including JKFS], to make all decisions regarding those matters and to supervise, direct and control the actions of the Officers and to perform any and all other actions customary or incident to the management of the Company's business, property and affairs."[20] The Board was comprised of five managers, and NVP designated four of them.[21] NVP also had the power to remove any of its Board designees "at any time . . . with or without cause."[22]

- The members of JK Holdings had "no power to participate in the management of [JK Holdings] or to vote on any matter, except as specifically set forth in [the JK Holdings LLC Agreement], or as may be required" by law.[23]

- JKFS could not undertake any one of sixteen enumerated actions without express approval of the NVP-controlled Board, including "hir[ing] or terminat[ing] any officer, or approv[ing] or modify[ing] the base salary, bonus or other material compensation arrangements for any officer, including any issuance of Performance Units purusuant to the Company Incentive Plan."[24]

---

[19] *See* Dkt. 1, Exs. 2 ("Arbitration Demand"), 3 (Employment Agreement), and 7 ("Purchase Agreement"); *see also* Dkt. 46, Ex. 2 (JK Holdings LLC Agreement).

[20] JK Holdings LLC Agreement, § 5.1(a).

[21] *Id.* at § 5.1(b)(i)–(ii).

[22] *Id.* at § 5.1(b)(iii).

[23] *Id.* at § 5.1(a).

[24] *Id.* at § 5.1(a)(i)–(xvi).

- Andreacchi, in his capacity as JKFS's CEO, did not report to the managers of JKFS, but instead, to the NVP-controlled Board.[25]

- The NVP-controlled Board determined Andreacchi's JKFS base salary, incentive compensation, and equity compensation.[26]

- The NVP-controlled Board could terminate Andreacchi for cause if he, among other things, violated its "reasonable directives."[27]

- Legal notice to JK Holdings required notice to NVP.[28]

13. The above list, like the letter and shared address and telephone number in *Cohen*,[29] elucidates who called the shots in this arrangement. NVP controlled the JK Holdings Board, which in turn, exerted near total control over JKFS. The Order's conclusion that NVP controlled JKFS does not contradict California law.

14. This outcome does not conflict with Delaware law. The outcome under Delaware law is the same although the analysis is slightly more complicated than that called for by *Cohen*. Recent decisions of this court addressing the issue have focused on whether the non-signatory is a third-party beneficiary or "closely related" to the agreement. A party is "closely related" to an agreement if (1) the party receives

---

[25] Employment Agreement § 2 (Defendant "will report to the Board of Managers (the 'Board') of Junk King Holdings, LLC[.]").

[26] *Id.* at §§ 3(a), (b), and (f).

[27] *Id.* at § 4(c)(iii).

[28] JK Holdings LLC Agreement § 10.1.

[29] Though the court does not rely on it for its analysis, it bears noting that NVP sent out a letter (on its letterhead) to Andreacchi, two months before the Employment and Purchase Agreements were inked, laying out the preliminary terms and conditions of Andreacchi's employment. Dkt. 33, Ex. C. NVP, like the parent entity in *Cohen*, held itself out to third-party Junk King as the entity in control of the relationship that provides the contractual basis for arbitration (*i.e.*, the employment relationship between JKFS and Defendant).

8

a direct benefit from the agreement; or (2) it was foreseeable that the party would be bound by the agreement.[30]

15.     This court has bound non-signatories to a forum selection clause where the non-signatories executed separate but mutually dependent agreements. In *Weygandt v. Weco, LLC*, the court bound Weygandt & Associates ("W&A") to the forum selection clause in an asset purchase agreement it did not sign.[31] W&A, however, was a party to a lease agreement executed as a necessary closing condition to the asset purchase agreement.[32] The court found the closely-related test satisfied because the lease proceeds were a direct benefit from the asset purchase agreement.[33] The court arrived at the same conclusion in *Florida Chem. Co., LLC v. Flotek Indus.*, which bound a party to a forum selection clause in a stock purchase agreement it did not sign, where the party had signed a related supply agreement as a closing condition to the purchase agreement.[34]

---

[30] *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *4 (Del. Ch. Sept. 18, 2019).

[31] *Weygandt v. Weco*, LLC, 2009 WL 1351808 (Del. Ch. May 14, 2009).

[32] *Id.* at *1 ("As a condition of closing, the Asset Purchase Agreement also required that several related agreements be executed. One of these agreements was for Weco-Delaware to lease the Lincoln Facility from W & A (the 'Lease Agreement').").

[33] *Id.* at *2 ("The interdependence of the Asset Purchase Agreement and the Lease Agreement is evident from several provisions in the two documents.").

[34] *Florida Chem. Co., LLC v. Flotek Indus., Inc.*, 2021 WL 3630298 (Del. Ch. Aug. 17, 2021).

9

16.    Here, the NVP-executed Purchase Agreement was conditioned on execution of the Employment Agreement.[35] Andreacchi's continued employment after NVP's acquisition of Junk King was part of the bargain memorialized in the Purchase Agreement. Thus, the direct benefits NVP received from executing the Purchase Agreement were also derived from JKFS's execution of the Employment Agreement.

17.    As to foreseeability, the examples above detailing NVP's control over JKFS make it foreseeable that NVP would be bound by the Employment Agreement.[36] There are two other factors that support foreseeability.

18.    First, whether Andreacchi would be paid certain types of closing consideration in connection with a "Deemed Liquidation Event" (as defined in the Employment Agreement) was tied to the rate of return on NVP's equity investment in Junk King. This setup required NVP to (at the very least) participate in calculating Andreacchi's closing consideration. It is reasonable to expect that if Andreacchi challenged the calculation of the closing consideration, such a challenge would be aimed at the entity responsible for the basis of that calculation, NVP. [37]

---

[35] Purchase Agreement § 7.02(e) ("The obligations of Purchaser [NVP] to consummate the transactions contemplated by this agreement are further subject to the satisfaction . . . at or prior to the Closing of the following conditions . . . (e) An Employment Agreement, in substantially the form attached hereto as Exhibit G-1, shall be executed by the Operating Company [JKFS] and Founder [Defendant][.]").

[36] *See CompuCom Sys., Inc. v. Getronics Fin. Hldgs. B.V.*, 2012 WL 4963308 (D. Del. Oct. 16, 2012) (binding a non-signatory parent entity to a forum selection clause in an agreement signed by its subsidiaries where the parent "was the driving force behind the transaction at issue and actively participated in all facets of such").

[37] *See* Arbitration Demand ¶ 58 ("Norwest . . . artificially inflat[ed] its actual equity investment in JKFS, LLC in an effort to calculate a lower ratio for its return on its

10

19.    Second, the Employment Agreement, "together with the Confidentiality Agreement, the Purchase Agreement, the Restrictive Covenant Agreement, and any other plans or agreements referenced [in the Employment Agreement] . . . constitute[d] the entire agreement between the parties with respect to the subject matter [of the Employment Agreement]."[38]   NVP is a party to the Purchase Agreement.  It is reasonably foreseeable that NVP, as a party to one of the contracts that constituted the "entire agreement" with respect to Andreacchi's employment, would be bound by the Employment Agreement.[39]

20.    The Employment Agreement contains a valid arbitration provision, NVP is closely related to the Employment Agreement, and Andreacchi's arbitration claims arise from the Employment Agreement.  The Order, therefore, does not contradict Delaware law by holding that NVP is bound by the Employment Agreement.

21.    To argue that interlocutory review serves considerations of justice, NVP advances two slippery-slope theories.  The first is that because the court used California law to determine whether NVP is bound by the Employment Agreement,

---

equity investment in JKFS, LLC.  This artificial calculation in breach of the express terms of the Employment Agreement, was utilized to deny Andreacchi the compensation he was entitled under the Employment Agreement.").

[38] Employment Agreement § 6(d).

[39] *Flotek Indus., Inc.*, 262 A.3d at 1082 (binding a non-signatory to the forum selection clause in a stock purchase agreement where the non-signatory was party to a related supply agreement and the stock purchase agreement included an integration clause stating that both agreements were part of the "entire agreement" among the parties with respect to the stock purchase and thus, the agreements "should be read together as a unitary contractual scheme").

11

and NVP is a Delaware entity, the Order has created an environment where Delaware companies can have their corporate veils pierced by "any state law identified in any contract executed by their subsidiaries."[40] The second is that the Order "expose[s] investors to litigation against the companies in which they invest."[41] Neither argument is availing.

22. Again, as Andreacchi correctly points out, the Order applied California law.[42] NVP fails to explain how an order applying California law to a California employment agreement will have far-reaching effects on "how Delaware courts are to apply corporate law principles."[43] In any event, the Order is based on the circumstances of this case. There is no reason to believe the Order will have the sweeping and destructive precedential results NVP portends.[44]

23. Of real and pressing consideration though is the fact that NVP seeks to have this court decide claims brought by a California resident against a California-based company under a California employment agreement. Public policy dictates that the parties should litigate these issues in California.[45] It is California, not

---

[40] Application ¶ 31.

[41] *Id.* at ¶ 32.

[42] Dkt. 66, ¶ 21.

[43] Application ¶ 31.

[44] Additionally, it bears noting that that the Order is not a published opinion of this court, and therefore, carries less, if any, precedential value. *In re Louisiana-Pac. Corp. Deriv. Litig.*, 705 A.2d 238, 240 (Del. Ch. 1997) ("[U]nless a deliberated opinion is produced along with a signed order, this Court will rarely give such orders much precedential weight.").

[45] *See AlixPartners, LLP v. Mori*, 2022 WL 1111404, at *9 n.92 (Del. Ch. Apr. 14, 2022) ("[T]he court continues to grapple with Delaware's interest in resolving actions

Delaware, that has a vested interest in governing relationships between the state's employers and employees and a similar interest, as noted in the Order, in promoting arbitration of California worker disputes.[46] Considerations of justice support denying certification.

24.    Independently evaluating and balancing the Rule 42(b) factors, the court finds the factors weigh against granting certification.  Nothing advanced by NVP suggests the type of exceptional circumstances warranting interlocutory review.[47]

25.    In the alternative to certifying its request for interlocutory appeal, NVP requests that the court direct entry of a partial final appealable judgment consistent with the Order under Court of Chancery Rule 54(b).[48]  "[T]o meet the specific requirements of Rule 54(b), [NVP] must show: (i) that the action involves multiple claims or parties; (ii) that at least one claim or the rights and liabilities of at least one party have been finally decided; and (iii) that there is no just reason for delaying an

---

that are fundamentally employment disputes where Delaware entities are used as vehicles for employment compensation."); *Focus Fin. P'rs, LLC v. Holsopple*, 250 A.3d 939, 975 (Del. Ch. 2020) ("This case is fundamentally an employment dispute between Focus Sub and Holsopple. During his employment, Holsopple lived in California and performed a majority of his work there. Focus Sub and Holsopple should litigate this case in California under California law.")

[46] Order ¶ 3.

[47] Supr. Ct. R. 42 (b)(ii); *see also Vick v. Khan*, 204 A.3d 1266, 2019 WL 856599, at *1 (Del. Feb. 21, 2019) (TABLE) (observing that applications for interlocutory review are granted only in "exceptional circumstances").

[48] Application ¶¶ 33–35.

appeal."[49]  To satisfy the third prong of this test, NVP "must show some danger of hardship that would result from a delay of its appeal."[50]

26.     The first two prongs of the Rule 54(b) test are met.  The third is not. NVP points to the potential hardship of having to arbitrate issues they contend they have not agreed to arbitrate.[51]  In the context of a motion for preliminary injunctive relief, that particular danger is sufficient to establish a threat of irreparable harm.[52] But an order granting preliminary injunctive relief is different from an order that makes an exception to "the strong public policy that piecemeal appeals should not be presented to the Delaware Supreme Court."[53]  The court is constrained to exercise its authority to contravene such public policy only where a movant satisfies its "burden of showing that his or her situation is the infrequent harsh case that threatens harsh results and therefore merits the favorable exercise of discretion."[54]

---

[49] *SRG Glob. Inc. v. Robert Family Hldgs., Inc.*, 2011 WL 13491605, at *2 (Del. Ch. Mar. 4, 2011) (quoting *In re Tri-Star Pictures, Inc. Litig.*, 1989 WL 112740 (Del. Ch. Sept. 26, 1989)) (internal quotation marks omitted).

[50] *Id.*

[51] Dkt. 70, 2–3.

[52] *See Parfi Hldgs. AB v. Mirror Image Internet, Inc.*, 842 A.2d 1245, 1259 (Del. Ch. 2004) ("It is well settled that . . .  the procession of an unwarranted arbitration poses the threat of irreparable injury to the party rightfully resisting arbitration.").

[53] *In re Explorer Pipeline Co.*, 2001 WL 1009302, at *2 (Del. Ch. Aug. 29, 2001).

[54] *Id.* at *2–3 (denying Rule 54(b) motion where the movant did "not offer a sufficient showing of potential hardship to warrant the exercise of the Court's discretion in favor of the application").

27.    In *SRG Global*, this court denied a similar request for final judgment as to certain claims that had been dismissed and became subject to arbitration.[55] The court ruled that the plaintiff "failed to prove that the harm likely to result in the potentially unnecessary arbitration it complains of [was] sufficient to support entry of a partial judgment under Rule 54(b)."[56] In arriving at its decision, the court noted that the plaintiff did not allege that arbitration would be "unduly long or result in excessive costs or expenses."[57] So too here. NVP does not suggest arbitration of the dismissed claims will be more difficult, time consuming, or costly than litigating the same issues here. That weighs in favor of denying NVP's request.

28.    For the foregoing reasons, NVP's Application for Certification of Interlocutory Appeal or, in the Alternative, Motion for Partial Final Judgment Under Rule 54(b) is DENIED.

/s/ Kathaleen McCormick
Chancellor
Dated: November 4, 2024

---

[55] *SRG Glob. Inc. v. Robert Family Hldgs., Inc.*, 2011 WL 13491605 (Del. Ch. Mar. 4, 2011).

[56] *Id.* at *3.

[57] *Id.*

15